**Ilo Marie GRUNDBERG, individually and Janice Gray, as personal representative of the Estate of Mildred Lucille Coats, Deceased, Plaintiffs,**

**v.**

**The UPJOHN COMPANY, a corporation, Defendant.**

**The UPJOHN COMPANY, Plaintiff**

**v.**

**Ilo Marie GRUNDBERG; Janice Gray; C. Neal Pope; Daniel W. Sigelman; Earle F. Lasseter; Steven W. Saccoccia; Pope, McGlamry, Kilpatrick and Morrison; Edward H. Kellogg, Jr.; and Gary W. Pendleton, Defendants.**

**Civ. Nos. C89–274G, C91–003G.**

United States District Court,
D. Utah, C.D.

June 14, 1991.

See also 137 F.R.D. 365.

C. Neal Pope, Steven W. Saccoccia, Daniel W. Sigelman, Atlanta, Ga., Earle F. Lasseter, Columbus, Ga., Ross Workman, Thomas R. Vuksinick, Salt Lake City, Utah, for plaintiffs Grundberg et al.

Lane D. Bauer, Kansas City, Kan., Stephen E. Scheve, Robert McCully, Kansas City, Mo., Merlin O. Baker, Paul S. Felt, Thomas L. Kay, Salt Lake City, Utah, for defendant Upjohn Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

J. THOMAS GREENE, District Judge.

On January 16 and 17, 1991, the court conducted a joint trial and evidentiary hearing in these consolidated cases concerning both the motion to remove confidentiality in the products liability action (C89–274) and trial of the copyright infringement action (C91–003). Witnesses testified and exhibits were received in evidence, after which the parties rested and the factual record was closed. The court directed that counsel submit post hearing memorandums of law. On March 22, 1991, the court heard final argument of counsel and the matter was taken under advisement. The court has reviewed the file, including the trial transcripts and the various and extensive memorandums of law submitted by both parties. Now being fully advised the court makes and enters its Findings of Fact and Conclusions of Law applicable to both cases.

### FINDINGS OF FACTS

1. During discovery in *Grundberg v. Upjohn,* the products liability case, plaintiffs ("Grundberg") requested numerous documents from the defendant ("Upjohn"). The documents were produced and made available under the terms of a stipulated protective order which was approved by the Magistrate Judge of this court on October 4, 1989.

2. Pursuant to the said protective order, defendant stamped each page of each document produced with the following legend:

> "CONFIDENTIAL. This document is subject to restriction by order of the United States District Court, District of Utah, Civil No. 89–C–274–W, and may not be copied or disseminated except by order of the court. There may be serious penalties for violation of the court's order with respect to this document."

The protective order further provided that:

> 4. *Designation shall constitute an affirmative representation to the court that the producing or responding person believes, in good faith and upon reasonable inquiry, that the information should be confidential and protected according to law.*
>
> * * * * * *
>
> 11. This protective order is without prejudice to reconsideration by the court as discovery continues and may, upon a showing of need and good cause, be modified.

Emphasis added.

3. On August 1, 1990, Grundberg filed a Motion to Remove Confidentiality Designation and attached exhibits from certain documents which had been produced pursuant to the protective order in the products liability case. On November 9, 1990, Grundberg submitted additional documents to the court for *in camera* inspection.

4. The documents which were submitted to the court are representative of approximately 8,000 pages of documents covered by the protective order as to which the confidentiality designation is sought to be removed. These documents were identified at the January 16–17, 1991 hearing in categories, as follows:

| Category | Description of Documents |
|---|---|
| A | Published articles concerning Halcion |
| B | Drug Experience Reports |
| C | Internal Upjohn Memorandum and Reports Regarding Adverse Reactions to Halcion |
| D | January 10, 1984 Letter from a third party |
| E | Internal Upjohn Memorandum dated August 19, 1989, entitled "New Format, Scenario Ideas" |

| Category | Description of Documents |
|---|---|
| F | Internal Upjohn Memorandum dated June 17, 1988, entitled "Response to Japanese Ministry of Health and Welfare Concerning Halcion Tablets" |
| G | "List of Clinical Research and Test Documents for Which Confidentiality Should be Removed," which contains Case Report forms, technical and statistical reports and executive summaries<br>Exhibit A—Example of Technical Report<br>Exhibit B—Example of Clinical Trial Summary (Executive Summary)<br>Exhibit C—Example of Case Report Form |

The documents are more particularly described as follows:

*Published Articles and Similar Materials—Category (A)*—Over 780 articles totalling approximately 5,000 pages were stamped "Confidential." Counsel for Upjohn has acknowledged that these articles should not be within the protective order.

*Drug Experience Reports—Category (B)*—Drug experience reports, which were submitted to the Food & Drug Administration ("FDA"), contain medical events such as patients' adverse reactions, associated with the drug Halcion. These were submitted to the FDA by Upjohn and third persons after Upjohn received FDA approval to market the drug. Everything contained in such drug experience reports, other than the names of the patients and individuals who report the medical event, can be and some have been obtained through the Freedom of Information Act ("FOIA").

Upjohn agrees that the drug experience reports are available to the public through an FOIA request. However, Upjohn claims that if these documents are released to the media, they and other documents could produce a "media effect" phenomenon from increased publicity about a product resulting in an increase in the potential for "false signals" about adverse reactions, and an unfair trial. Dr. Judith Jones, former director of the FDA's Division of Drug Experience, testified on behalf of defendant that release of these documents could create "media bias" and thereby increase the rate of reporting of medical events attributed to Halcion in the FDA's Spontaneous Reporting System ("SRS").[1] However, Dr. Jones' testimony was largely speculative as to the media bias phenomenon as it relates to Halcion.[2]

*Upjohn Memorandum and Reports of Adverse Reactions—Category (C)*—This category of documents consists of a specific Upjohn memorandum entitled "List of Murders/Attempted Murders/Threat of Physical Attack Reported with Triazolam," and various adverse drug reports referred to in the memorandum. The adverse drug reports were filed with the FDA and are available upon request under FOIA.

Upjohn agrees that the memorandum or list is not a trade secret and that it does not constitute confidential information. Up-

1. The SRS is a Federal Food & Drug Administration mechanism for collecting post-marketing medical events associated with any particular drug.

2. Dr. Jones testified that the harm identified by Upjohn resulting from public disclosure of documents might require a manufacturer to investigate and follow up adverse drug experience reports, and that such information "can be misused depending upon how, you know, how it occurs." Tr. 1–67.

john maintains, however, that it is protected by federal copyright law.

*Letter from Paul Dumont—Category (D)*—This is a letter dated January 10, 1984, written by an individual not affiliated with Upjohn.

Upjohn agrees that this document should not be considered confidential or a trade secret because it was not written by Upjohn, and is not copyrightable by Upjohn. Upjohn claims, however, that pre-trial release of this document will harm Upjohn's ability to receive a fair trial.

*Internal Upjohn Memorandum Dated August 1, 1989—Category (E)*—This is a memorandum to four Upjohn employees regarding the Federal Food and Drug Administration Advisory Committee's reevaluation of Halcion.

Upjohn does not claim that this document is confidential or that it constitutes a trade secret. Upjohn does claim, however, that it is a document authored by Upjohn employees within the course of their employment, and thus entitled to federal copyright protection. Also, Upjohn claims that it is a document which, if released, could create media bias in the Spontaneous Reporting System and skew the numbers therein, and that it is a document which, if released prior to the trial, will prejudice Upjohn's ability to receive a fair trial.

*Internal Upjohn Memorandum dated June 17, 1988—Category (F)*—Upjohn claims that this document is an unpublished, Upjohn-authored document entitled to federal copyright protection, and that if disseminated prior to trial could also prejudice Upjohn's ability to receive a fair trial.

*Case Report Forms, Technical and Statistical Reports, Summaries—Category (G)*—Upjohn claims that all of the documents within Category G are entitled to federal copyright protection and that such are a vital part of its new product research and development, that they were submitted to the FDA as part of Upjohn's New Drug Application (NDA), and that they contain trade secrets and/or confidential information. Upjohn admits that all Category G documents contain safety and effectiveness data. Upjohn describes the documents within Category G as follows: "The basic block of the clinical study program is the case report form ("CRF"). It contains the raw data obtained in the study. From those CRFs, Upjohn prepares technical and statistical reports evaluating and summarizing the raw data. Finally, Upjohn prepares executive summaries evaluating the results of several technical reports." Upjohn's Post–Hearing Brief at p. 49. Category G, then, consists of the various parts of Upjohn's clinical study program, all of which were submitted to the FDA as part of Upjohn's New Drug Application ("NDA").

There are three types of documents in this category. *Case reports* contain the "actual raw data" filled out by the clinical investigator (or an employee of such investigator) as he or she is observing a patient. The investigator may or may not work for Upjohn. The second type of document in this category is the *technical and statistical report* which is a document which reflects the study undertaken. Such a document may be authored by Upjohn or it may be authored by the independent clinical investigator. All of the data analyzed in both technical and statistical reports is derived from the information in the case report form (CRF) that has been recorded by a clinical investigator (or one of his or her employees).[3] The third type of document within Category G, *executive summaries,* preface one or more technical reports. These are all Upjohn authored documents which summarize information in the technical and statistical reports, and the basic information in the case report forms.

5. After August 1, 1990, as a result of the Motion to Remove Confidentiality Designation by Grundberg in the products liability case, Upjohn began to investigate the possibility of copyrighting the documents it had produced under the terms of the pro-

3. Statistical reports might be either a portion of a technical report or a separate report generated later. Dr. Ishler testified that while Upjohn most often compiles the statistics in its studies, "there are occasions when an investigator has a group that does these statistics...." Tr. 1–171.

tective order and to seek copyright registration for those documents.

6. Upjohn does not normally seek to obtain a Certificate of Copyright Registration for its documents, and did not determine or seek a certificate for the documents in this case until after August 1, 1990.

7. During the period August to December 1990, it became Upjohn's purpose to seek a copyright certificate for the documents involved in the products liability litigation to prevent public disclosure or dissemination of the documents, including free and unrestricted use of the documents in the courtroom, in the event this court should remove confidentiality restrictions applicable to the documents under the terms of the existing protective order.

8. On or about December 5, 1990 Upjohn applied for a Certificate of Copyright Registration with the Copyright Office for all of the documents covered by the protective order, as well as numerous other documents, which were referred to collectively as "Upjohn Company Documents Pertaining to Triazolam Tablets (Trademark Halcion)." The application contained a letter requesting special relief from the Copyright Office from the deposit requirements; a request to expedite the processing of the application; a completed and executed Copyright Form TX, Application for Registration, with an attached exclusionary paragraph; a list of Bates numbers, nineteen pages long, which purportedly identified approximately 90,000 pages of documents (which included all of the litigation documents in the products liability case before this court); and 100 "masked" pages for deposit.

9. Upjohn sought copyright registration pursuant to 37 C.F.R. § 202.3(b)(3)(i)(B) (1990) which permits the registration of multiple unpublished works as a single unpublished "collection" under certain circumstances.

10. The "masked" documents submitted by Upjohn to the Copyright Office are copies of original documents, but only a small diagonal strip of the original document appears on the copy, and the rest of the page is blank. It is virtually impossible to identify anything about the document when it is in "masked" form.

11. Upjohn did not establish that any original documents in fact were presented to or reviewed by the Copyright Office, or that the 100 pages of masked documents deposited with the Copyright Office had been selected in a manner which was truly representative of all of the approximately 90,000 pages of documents or which sufficiently identified the documents. Upjohn provided no means of relating the deposited material to the documents they were supposed to represent and Upjohn did not identify the documents sought to be represented by the deposited items by category or any other discernible way. The 100 masked pages of documents in fact were not representative of the documents sought to be registered for copyright.

12. The application for registration submitted by Upjohn included a list of more than 90,000 pages of documents entitled *"BATES NUMBERS OF UPJOHN HALCION DOCUMENTS FOR WHICH COPYRIGHT REGISTRATION IS SOUGHT."* It cannot be discerned from the Bates numbers identifying the listed documents which of the thousands of documents listed is published or unpublished, or authored by Upjohn or not authored by Upjohn.

13. Many of the documents for which Upjohn applied for copyright registration are previously published works and many are not authored by Upjohn or any employee of Upjohn. Upjohn did not segregate or specifically identify or provide an index or other method to segregate or identify, unpublished, Upjohn authored documents from among the 90,000 pages of documents listed in the application or the Certificate of Copyright Registration. As a result, it is not possible to identify specific documents copyrightable by Upjohn by reference to the Certificate of Copyright Registration or the application either as to the approximately 8,000 pages of documents which are the subject of Grundberg's motion or the approximately 82,000 additional pages of documents listed in the Copyright Certificate.

14. On December 5, 1990, the Copyright Office issued a Certificate of Copyright Registration for the documents. The authorship portion of the Copyright Certificate (part 2) states that "all documents were created by the Upjohn Company, its employees, consultants, agents or servants *". The following exclusionary paragraph was added to the authorship statement by attachment:

> * Company documents of The Upjohn Company, its divisions, subsidiaries, or affiliates, pertaining to the prescription drug triazolam (Halcion) and bearing the Bates numbers listed on the attached pages, excluding those documents containing non-copyrightable subject matter (blank forms and lists of ingredients) or subject matter in which The Upjohn Company does not own the copyright (previously copyrighted material; documents created by the Food and Drug Administration, other regulatory agencies, or their agents and employees; and documents created by other organizations and individuals not within the employ or under contract to The Upjohn Company).

15. Upjohn obtained the advice and approval of the Copyright Office regarding the procedure for registering the approximately 90,000 pages of documents, but apparently did not advise the Copyright Office that many of the documents were covered by a protective order of this court.

16. The Copyright Office granted Upjohn special relief under 37 C.F.R. § 202.20(d) (1990), from the deposit requirement, and on December 11, 1990, the Copyright Office approved Upjohn's Application for Certificate of Copyright Registration, including the exclusionary paragraph added to the authorship statement, and issued TXU 442–501. Upjohn did not establish that the Copyright Office examined any documents except the 100 pages of masked documents which Upjohn had selected and submitted as supposedly representative of the 90,000 pages of documents for which copyright registration was sought.

17. On December 21, 1990, counsel for Upjohn wrote counsel for Grundberg stating that Upjohn claimed a copyright in the documents covered under the protective order of this court which were produced in the products liability case, and demanding that Grundberg and her attorneys notify Upjohn by December 28, 1990 that Grundberg would not disseminate any of the said documents.

18. On or about December 28, 1990, counsel for plaintiffs in the products liability action responded by denying any intent to disclose and distribute to the general public the documents produced pursuant to discovery requests.

19. On or about January 2, 1991, Upjohn filed this copyright infringement action alleging that the copyright defendants were threatening to infringe Upjohn's copyright. In the copyright action, Upjohn named the products liability plaintiffs and their lawyers as defendants.

20. Upjohn failed to show an imminent threat of copyright infringement to any of the documents for which Upjohn could claim copyright ownership.

21. Plaintiffs made a particularized showing of documents sought to be declassified from the protective order by demonstrating which documents they believed to be not confidential.

22. Upjohn failed to demonstrate confidentiality as to such documents or to show good cause for keeping such within the protective order for that reason.

23. Upjohn did not sustain the burden of demonstrating good cause for maintaining the documents under the protective order because attorneys for the plaintiffs allegedly intend to disseminate documents now covered by the protective order in such a way as to prejudice the trial of the case or because an alleged media bias will occur if documents are released from the protective order, or that Upjohn would suffer particularized harm or damage as a result of such.

24. Upjohn did not quantify or demonstrate the commercial value of the documents and the information contained therein or that it will suffer specific commercial or cognizable harm if the doc-

uments are released from the protective order.

25. Upjohn did not demonstrate the existence of any actual competition for the information contained in the documents, that other drug manufacturers are attempting to compete with Upjohn in any area described or contained in the documents, or that it will suffer a competitive disadvantage if the documents are released from the protective order.

26. Upjohn failed to require all persons who reviewed the documents to execute a confidentiality agreement as required under the terms of the protective order.

27. Upjohn demonstrated that there has already been widespread publicity relative to alleged side effects of Halcion, and that access to litigation documents produced in pre-trial proceedings as part of the discovery process, could cause additional widespread publicity prior to trial. Such publicity prior to trial could complicate the jury selection process.

28. Plaintiffs failed to demonstrate that they will be prejudiced or injured if there is no pre-trial disclosure or pre-trial public accessibility to the documents.

29. Plaintiffs have demonstrated that continuation of the protective order hampers trial preparation and has a chilling effect upon experts and potential witnesses because of the requirement thereunder that a confidentiality agreement must be executed before viewing the documents.

30. The court finds that neither party would be prejudiced and that it would be in the public interest if the protective order is terminated as to the documents covered in the Motion to Remove after commencement of the trial; provided that (1) such documents are admitted into evidence at the trial, or (2) that such documents are filed with the court and are used as the basis for expert opinion testimony even though not admissible or admitted into evidence, or (3) that such documents are otherwise used at trial with the permission of the court.

CONCLUSIONS OF LAW

1. A Copyright Certificate is prima facie evidence of the facts stated therein.

2. The Grundberg defendants in the copyright infringement action rebutted any prima facie showing of validity of Upjohn's Certificate of Copyright Registration by demonstrating the invalidity of the Certificate and the facts stated therein regarding the litigation documents covered by the protective order in the products liability case. Grundberg, et al. presented sufficient evidence to overcome the statutory presumption of validity of Upjohn's Certificate of Copyright Registration. The burden of proof was shifted to Upjohn to demonstrate validity of the Copyright Certificate and the facts stated therein.

3. Upjohn did not sustain the ultimate burden of proof or persuasion to demonstrate the validity of the Certificate of Copyright Registration.

4. The exclusionary provision in the authorship portion of Upjohn's Certificate of Copyright Registration fails to segregate and identify, or to provide an index or means to segregate or identify what documents are intended to be covered by the Certificate. The determination by the Copyright Office in approving the exclusionary paragraph as appropriate for registering a "single unpublished collection" of works constituted both error as a matter of law and an abuse of discretion.

5. Approval of the deposit of documents by the Copyright Office by granting special relief under 37 C.F.R. 202.20(d) constituted an abuse of discretion by the Copyright Office.

6. Upjohn's Certificate of Copyright Registration is invalid because the collection of documents therein includes both published and unpublished works and works for which Upjohn is not the author or copyright claimant, contrary to the requirements of the applicable statute and regulation.

7. A valid Certificate of Copyright Registration is a condition precedent to maintaining an infringement action.

8. Upjohn did not sustain its burden to demonstrate that the Certificate of Copyright Registration or the application pro-

vides sufficient information to give reasonable notice of what documents are covered therein to support issuance of an injunction in an infringement action.

9. Upjohn failed to sustain its burden to clearly show a right to injunctive relief in an infringement action. In this regard, Upjohn failed to show a likelihood of success on the merits, particularized substantial threat of irreparable harm, that harm it may suffer outweighs the harm to the plaintiffs, or that further restricting the use of the documents in this litigation would serve the public interest.

10. Upjohn did not establish that the documents for which it seeks copyright protection are copyrightable as original expressions or that it is the author of the documents. Upjohn further failed to demonstrate that all of the documents described in the Certificate of Copyright Registration are unpublished and not part of the public domain.

11. The copyright law does not prevent the disclosure of information or make non-confidential documents confidential.

12. Filing documents with the court, and the offering and receipt of such documents into evidence, even though such may be subject to public access, does not constitute publication under the copyright law. Use in the courtroom and public accessibility to unpublished Upjohn documents does not preclude retention of unpublished status.

13. Upjohn may not prevent the use in court and public accessibility of documents by claiming copyrightable rights or obtaining a copyright certificate.

14. Upjohn failed to sustain the burden of proof to show good cause for retention of the documents within the umbrella of the protective order.

15. The information contained in the documents covered by the protective order was not shown to be confidential and protected according to law.

16. Neither Upjohn's Certificate of Copyright Registration nor its claim of copyright to the documents constitutes good cause to continue the documents under the restrictions of the protective order.

17. Plaintiffs properly raised the issue of declassification of documents under the protective order of this court by identifying documents believed not to be confidential or otherwise properly included under the protective order.

18. Plaintiffs failed to demonstrate how they will be injured if there is no pre-trial disclosure or pre-trial public accessibility of the documents.

19. Plaintiffs did demonstrate that continuation of the protective order hampers trial preparation and has a chilling effect upon experts and potential witnesses because of the requirement thereunder that a confidentiality agreement must be executed before viewing the documents.

20. Upjohn has not demonstrated good cause or met its burden of proof to establish that the documents sought to be released from the confidentiality designation in the protective order contain trade secrets, that such contain confidential information or that release of such documents from the protective order would cause Upjohn cognizable or commercial harm.

21. The court concludes that neither party would be prejudiced and that it would be in the public interest if the protective order is terminated as to the documents covered in the Motion to Remove after commencement of the trial; provided that such documents are admitted into evidence at the trial or that such documents are filed with the court and are used as the basis for expert opinion testimony even though not admissible or admitted into evidence, or are otherwise used at trial with permission of the court.

## MEMORANDUM DECISION AND ORDER

The main case before the Court, C89–274 (hereinafter the "products liability case"), is a wrongful death action in which plaintiff Ilo Marie Grundberg claims that the drug Halcion, manufactured by the defendant Upjohn, caused her to kill her mother. This case is set for trial on August 21,

1991. The matter presented for determination in that case at this time is whether numerous documents produced by the defendant and "designated confidential" under the terms of a protective order should continue to be regarded as confidential or otherwise restricted. The consolidated case, No. C91–003 (hereinafter the "copyright infringement action"), also involves litigation documents produced by Upjohn which are claimed to be restricted because they were registered for copyright by Upjohn, albeit after the original lawsuit was well underway.

*Products Liability Case*

During the course of discovery, plaintiffs ("Grundberg") submitted written discovery requests which related to numerous documents in the possession of defendant ("Upjohn"). Upjohn refused to produce the documents, whereupon Grundberg filed motions to compel production and Upjohn filed motions for a protective order. After reference by this court of the motions to the Magistrate, and further negotiations between the parties, the Magistrate approved a stipulated protective order in which it was provided that documents could be "designated confidential" by either side. On August 1, 1990 Grundberg filed a Motion to Remove Confidentiality Designation from Certain Documents Produced by Defendant. In that motion plaintiffs filed accompanying exhibits and sought to remove the "confidential" designation from approximately 8,000 pages of documents which had been produced by Upjohn. Thereafter, the parties filed several legal memorandums and Grundberg submitted to the court a number of *in-camera* exhibits as representative samples of the documents for which Grundberg seeks to remove the confidentiality designation.

*Copyright Infringement Case*

On or about December 5, 1990 Upjohn applied for and obtained a Certificate of Copyright Registration for over 90,000 pages of documents entitled "Upjohn Company Documents Pertaining to Triazolam Tablets (Trademark Halcion)," which included the documents covered by Grundberg's motion to remove confidentiality as well as all other documents produced in this and other litigation. On January 2, 1991, Upjohn filed a copyright infringement action and motion for preliminary injunction in this court (91C–003G) seeking to prevent dissemination of the documents because of alleged imminent copyright infringement.

The cases were consolidated,[1] and on January 16 and 17, 1991, the court conducted a joint trial and evidentiary hearing concerning both the motion to remove confidentiality in the products liability action and trial of the copyright infringement action. On March 22, 1991, final arguments of counsel were heard and all matters were taken under advisement. The court has reviewed the file and all materials therein, and being fully advised has made and entered its Findings of Fact and Conclusions of Law, and herewith renders its Memorandum Decision and Order.

## ANALYSIS

The court will discuss whether Upjohn has shown "good cause" in order to prevent removal of the documents which are included under the protective order, and whether Upjohn is entitled to maintain its copyright infringement action. Since Upjohn urges federal copyright protection as one of the grounds for restriction of the documents under the protective order, as well as the basis for its copyright infringe-

1. On or about January 11, 1991 the court consolidated the copyright infringement action with the product liability case for purposes of determining the issues raised in plaintiffs' Motion to Remove Confidentiality Designation in the products liability case and Defendant's Motion for a Temporary Restraining Order and Preliminary Injunction in the copyright infringement action. Thereafter, pursuant to Rule 65, Fed.R.Civ.P., the court advanced and consolidated Upjohn's application for a preliminary injunction in the copyright infringement case with the trial of that action on the merits, and combined that trial with the hearing of the motion to remove confidentiality designation in the products liability case. On January 17, 1991, the court entered an order of consolidation in the products liability and the copyright infringement actions.

ment action, the copyright issues will be discussed first.

## I. COPYRIGHT INFRINGEMENT

Federal district courts have been given exclusive jurisdiction in copyright cases, 28 U.S.C. § 1338 (1989) and are charged with the ultimate responsibility for determining whether a Certificate of Copyright Registration is valid. A valid copyright certificate must exist to support a copyright infringement action under 17 U.S.C. § 411(a) (1982 & Supp.1991). Also, the plaintiff must show that the defendant has engaged in copying which is prohibited by law. *Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 455 (2nd Cir.1989). Under 17 U.S.C. § 502, a court may issue temporary and final injunctions "to prevent ... infringement of a copyright," *Dallas Cowboys Cheerleaders v. Scoreboard Posters,* 600 F.2d 1184, 1187 (5th Cir.1979), or that the defendant threatens infringement and is about to engage in copying which is prejudicial to the rights of the copyright owner. *Rokus v. ABC, Inc.,* 616 F.Supp. 110, 112 (D.C.N.Y.1984).

The Grundberg defendants seek a declaration of this court that the copyright certificate obtained by Upjohn is invalid, and that in any event it cannot be utilized as the basis for this copyright infringement action. For the reasons set forth below, this court concludes that Upjohn's Certificate of Copyright Registration is invalid and cannot support an infringement action.

### A. VALIDITY OF THE CERTIFICATE OF REGISTRATION

A copyright claim must be correctly registered prior to filing suit for injunctive relief or damages.[2] Validity of registration is determined by compliance with the specific requirements of 17 U.S.C. § 409 (1982). It is important that the registration requirements be followed because the certificate describes what material is registered. Description of the copyrighted material in the application and copyright certificate is required in order to put the public on notice of what material is protected under the copyright laws. The description in the registration must meet a minimum standard of specificity sufficient to pass muster for identification of the material.

The registration certificate is *prima facie* evidence of copyright validity under 17 U.S.C. § 410(c) (1982).[3] However, the presumption is not absolute: "possession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable." *Whimsicality Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d at 455. The statute's legislative history describes the purpose for establishing the presumption:

> The principle that a certificate represents prima facie evidence of copyright validity has been established in a long line of court decisions, and is a sound one. It is true that, unlike a patent claim, a claim to copyright is not examined for basic validity before a certificate is issued. On the other hand, endowing a copyright claimant who has obtained a certificate with a rebuttable presumption of the validity of the certificate does not deprive the defendant in an infringement suit of any rights; it merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underlie the validity of the copyright *unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff.*

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 157, *reprinted in* 1976 U.S.Code Cong. &

2. Title 17, Section 411(a) (1982 & Supp.1991) provides in pertinent part: "[N]o action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title."

3. Section 410(c) of the Act provides in relevant part:

> (c) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.

Adm.News 5659, 5773 (emphasis added). The Third Circuit recently stated that the "presumption flowing from § 410(c) is not an insurmountable one, and merely shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." *Masquerade Novelty v. Unique Industries,* 912 F.2d 663, 668 (3rd Cir.1990).

1. *The Upjohn Documents Fail to Qualify as a "Single Unpublished Collection"*

It was demonstrated at trial and the court finds that Upjohn sought to include multiple works in the Copyright Certificate it obtained. However, the collection included documents which were published and unpublished, documents for which there was no common author and documents for which Upjohn is not and could not be the copyright claimant. In this regard, Upjohn freely admitted at trial that interspersed among the approximately 90,000 pages of documents in question are documents in which Upjohn could not claim a copyright. Upjohn's Copyright Certificate identifies only one collection of documents: *"UPJOHN COMPANY DOCUMENTS PERTAINING TO TRIAZOLAM TABLETS (TRADEMARK HALCION)."*

Copyright registration of multiple unpublished works as a single unpublished "collection" by a single Copyright Certificate is allowable under Section 408 of the Copyright Act [4] only pursuant to the following regulation promulgated by the Copyright Office:

> In the case of unpublished works: all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a *single unpublished "collection."* For these purposes, a combination of such elements shall be considered a "collection" if: (1) The elements are assembled in an *orderly form;* (2) the combined elements bear a *single title identifying the collection* as a whole; (3) *the copyright claimant in all of the elements, and in the collection as a whole, is the same;* and (4) all of the elements are *by the same author,* or, if they are by different authors, *at least one of the authors has contributed copyrightable authorship to each element.* Registration of an unpublished "collection" extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection.

37 C.F.R. § 202.3(b)(3)(i)(B) (1990) (emphasis added).

In this case, the documents identified in the Copyright Certificate fail to meet the threshold requirement that they constitute a "collection" within the meaning of the Regulation. Clearly, requirements (3) and (4) under the Regulation have not been met. It was established at trial that there are published works among the documents listed in the Copyright Certificate.[5] Also, the collection of documents assembled by Upjohn are not authored by the same author and no single author has contributed to all of the documents identified by the Bates numbers.[6]

4. (1) The Register of Copyrights is authorized to specify by regulation the administrative classes into which works are to be placed for purposes of deposit and registration, and the nature of the copies or phonorecords to be deposited in the various classes specified. The regulations may require or permit, for particular classes, the deposit of identifying material instead of copies or phonorecords, the deposit of only one copy or phonorecord where two would normally be required, or a *single registration for a group of related works.* 17 U.S.C. § 408(c) (1982 & Supp.1991) (emphasis added).

5. Seven such published works were admitted into evidence as trial Exhibits C through I. Also, it was established that over 780 published articles totalling approximately 5,000 pages which had been stamped as confidential were interspersed among the thousands of documents sought to be copyrighted.

6. Upjohn conceded at trial that not all of the documents with designated Bates numbers may be copyrighted by Upjohn. Tr. 2–59 to 2–60, 2–63, 2–68 to 2–69. The identity of the author of all 90,000 pages of documents is not apparent from the application for copyright registration. In this regard, Upjohn's own witness conceded that all of the documents listed by Bates number are "not authored by the same entity;" nor could the witness state there was "a single author that had contributed subject matter to every document on the list." Tr. 2–62.

Upjohn seeks to avoid its admittedly literal noncompliance with registration requirements by reason of the following exclusionary language which was added to the authorship statement in its copyright application, which was approved by the Copyright Office:

> * Company documents of The Upjohn Company, its divisions, subsidiaries, or affiliates, pertaining to the prescription drug triazolam (Halcion) and bearing the Bates numbers listed on the attached pages, *excluding those documents containing non-copyrightable subject matter* (blank forms and lists of ingredients) or *subject matter in which The Upjohn Company does not own the copyright* (previously copyrighted material; *documents created by the Food and Drug Administration,* other regulatory agencies, or their agents and employees; and *documents created by other organizations and individuals* not within the employ or under contract to The Upjohn Company).

Trial Exhibit 14 (emphasis added).

Through the vehicle of the aforesaid exclusionary language, Upjohn sought copyright registration of a collection of documents as a "single unpublished collection." Upjohn enumerated documents it intended to register for copyright in a common list with documents it did not intend to register for copyright, without identification or differentiation between those categories of documents or providing any reasonable means for anyone to do so. By approval of Upjohn's registration, the Copyright Office rendered a determination that multiple unpublished works can be registered under a single copyright certificate as a "single unpublished collection" pursuant to 17 U.S.C. § 408(c) (1982 & Supp.1991) and 37 C.F.R. § 202.3(b)(3) (1990) in this case. In so doing, the Copyright Office approved the aforesaid exclusionary paragraph in Upjohn's copyright registration, requiring no segregation or specific identification of the documents Upjohn intended to exclude from the commingled documents which were not copyrightable by Upjohn. In the circumstances here presented, the court is in as good a position as the Copyright Office to decide whether such exclusionary language can pass muster to create a valid copyright registration under a single certificate. In this regard, this court follows the Second Circuit in *Carol Barnhart, Inc. v. Economy Cover Corp.,* 773 F.2d 411 (2nd Cir.1985) which approved direct judicial determination of copyrightability. In *Barnhart* the court said:

> Judge Wexler properly exercised the discretion conferred on him by 17 U.S.C. § 410(c). Once defendant's response to plaintiff's claim put in issue whether the four Barnhart forms were copyrightable, he correctly reasoned that the "mute testimony" of the forms put him in as good a position as the Copyright Office to decide the issue. While the expertise of the Copyright Office is in "interpretation of the law and its application to the facts presented by the copyright application," *Norris Industries, Inc. v. I.T. & T.,* 696 F.2d 918, 922 (11th Cir.), *cert. denied,* 464 U.S. 818, 104 S.Ct. 78, 78 L.Ed.2d 89 (1983), it is permissible for the district court itself to consider how the copyright law applies to the articles under consideration.[7]

*Id.* at 414.

On de novo review, this court determines that approval of the exclusionary paragraph under the circumstances of this case was erroneous and not permissible under the regulation dealing with a "single unpublished 'collection.'" The exclusionary paragraph is fatally inconsistent with the "single registration for a group of related works" provision under the copyright law. A copyright claimant may not obtain a valid copyright certificate, and the copyright office may not effectively approve registration for such under 17 U.S.C. § 408(c) and 37 C.F.R. § 202.3(b)(3)(i)(B) (1990), where

7. *See also Masquerade Novelty v. Unique Industries,* 912 F.2d 663, 669 (3rd Cir.1990), Fn. 7, which cited *Carol Barnhart, Inc. v. Economy Cover Corp.,* 773 F.2d 411, 414 (2d Cir.1985) for the proposition that "where the only question is whether certain articles are copyrightable, the court is in as good a position as the Copyright Office to consider this question."

documents sought to be copyrighted are represented to be part of a single collection, embracing some documents which are not copyrightable, mixed in and listed indiscriminately with copyrightable documents and where the copyright application provides no reasonable or workable means for determining what documents in fact constitute the "single unpublished collection."

In order for the single collection provision to apply, all of the documents must be unpublished, authored by the same author, or a single author must have contributed copyrightable authorship to each document, and the claimant must be the same. *See* 37 C.F.R. § 202.3(b)(3)(i)(B). That was not the case here and the defect could not be cured by a mere statement of intended exclusion to remove some of the documents from the application without reasonable identification of the excluded documents. The exclusionary paragraph cannot save the day by merely asserting that Upjohn really only intends to copyright what it is entitled to copyright, without intelligible identification of the specific documents sought to be copyrighted. The Copyright Office erred as a matter of law in approving such an exclusionary paragraph under the circumstances of this case. Accordingly, this court rules that Upjohn's Certificate of Copyright Registration is fatally defective. This court also finds that the Copyright Office abused its discretion in this case under 37 C.F.R. § 202.3(b)(3)(i)(B) by approving the indiscriminate listing of commingled copyrightable and non-copyrightable documents and the exclusionary paragraph relating thereto.

2. *The copyright certificate fails to identify specific documents which are copyrightable.*

Apart from the requirements for copyright of multiple unpublished works, the copyright laws require that specific description of the work to be copyrighted must be set forth in the application for registration.[8] In this case Upjohn asserts a copyright claim to undetermined and unidentified documents which are mixed among thousands of documents many of which were not authored by Upjohn and which it admits it cannot register. For instance, the drug experience reports (DERs) in category B of the documents submitted at trial were authored by Upjohn personnel and other independent investigators, but Upjohn offered no specific identification of which DERs were authored by Upjohn and which were authored by other investigators. There is no way any examiner could determine from the Bates numbers listed in the copyright application, or anything deposited at the Copyright Office, what documents Upjohn claims are copy-

8. 17 U.S.C. § 409 (1982) provides:

The application for copyright registration shall be made on a form prescribed by the register of Copyrights and shall include—

(1) *the name and address of the copyright claimant;*

(2) in the case of a work other than an anonymous or pseudonymous work, the *name and nationality or domicile of the author or authors,* and, if one or more of the authors is dead, the dates of their deaths;

(3) if the work is anonymous or pseudonymous, the nationality or domicile of the author or authors;

(4) *in the case of a work made for hire, a statement to this effect;*

(5) if the copyright claimant is not the author, a brief statement of *how the claimant obtained ownership of the copyright;*

(6) the *title of the work,* together with any previous or alternative titles under which the work can be identified;

(7) the *year in which creation of the work was completed;*

(8) *if the work has been published, the date and nation of its first publication;*

(9) *in the case of a compilation or derivative work,* an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional materials covered by the copyright claim being registered;

(10) *in the case of a published work* containing material of which copies are required by section 601 to be manufactured in the United States, the names of the persons or organizations who performed the processes specified by subsection (c) of section 601 with respect to that material, and the places where those processes were performed; and

(11) any other information regarded by the Register of Copyrights as bearing upon the preparation or *identification of the work* or the existence, ownership, or duration of the copyright.

Emphasis added.

rightable by Upjohn.[9] Upjohn failed to provide in its copyright documentation sufficient identification of the documents or even the categories of documents within the protective order for which it sought registration.[10] Upjohn has taken the position that it is someone else's burden to find and identify the documents in question.[11]

This court determines that neither Upjohn's application nor the Certificate of Copyright Registration issued by the Copyright Office in this case pass muster. They are invalid because they fail to specify which of the documents are copyrightable to Upjohn, and provide no index or other workable means to separate and identify the documents in question from other documents in the registration which Upjohn concedes are not copyrightable. Upjohn simply failed to show with sufficient clarity and specificity which documents it intended to be included in its Certificate of Copyright Registration. Issuance of the Certificate of Copyright Registration without sufficient identification of the documents covered thereunder constituted an abuse of discretion by the Copyright Office.

3. *The few documents deposited were unrepresentative of the documents sought to be copyrighted.*

Upjohn sought to register over 90,000 pages of documents. The Copyright Office granted special relief from the normal procedure of depositing copyrighted materials and allowed Upjohn merely to lodge a list of Bates numbers and then to file 100 "masked" pages to fulfill the deposit requirement.[12] At the trial in this matter there was no adequate showing that even the 100 pages of documents were selected on a basis calculated to be truly representative of the documents sought to be copyrighted within the 90,000 pages of documents.[13] Apparently the Copyright Of-

9. Defendant's counsel, William G. Jameson, who executed the Application for copyright registration, testified at trial as follows:

Q If I give you a highlighter, could you draw with the highlighter through those numbers that Upjohn is claiming a copyright in?
A No.
Q So you don't know which of these documents Upjohn is claiming copyright in from looking at the Bates numbers alone?
A From looking at the Bates numbers alone, that's correct; but one could readily determine by looking at the documents to which the Bates number refers whether or not that's a protected document by the certificate, in my opinion.

Tr 2–55, 2–56.

10. Q It is a correct statement, is it not, that you cannot tell me today which of these Bates numbers is claimed by Upjohn to be its copyrighted material? ...
THE COURT: ... I think he's made it plain that he can't identify which Bates numbers relate to that which was either unpublished or published or written by Upjohn or not, but that your intent was only to include unpublished Upjohn-authored materials.
THE WITNESS: That's correct, Your Honor.

William G. Jameson Testimony, Tr. 2–76.

11. Q So in other words, it is your position that with the broad characterization made by Upjohn that the burden really becomes the Grundbergs' and perhaps the Court's to seek out, find, and identify which of the documents you claim are the subject matter of your copyright? ...
THE WITNESS: Yes, after looking at the certificate and the Bates list.

Jameson testimony, Tr. 2–79.

12. Counsel for Upjohn described the deposit requirement to the court and stated that documents were not lodged with the Copyright Office:

[W]e lodged the Bates numbers. The next step was to—there is a deposit requirement and the Copyright Office indicated that what they wanted was only a masked sample of documents which turned out to be 100 was it, approximately a hundred documents which were masked in such a way, and again, Your Honor will see this because we will present a copy of a document to you which made it absolutely impossible for anybody to know what was on that document, but it did have a very short, about a half-inch diagonal strip of writing which the Copyright Office had to have in order to carry out their duties.

So we made that deposit and that was what was required by the Copyright Office and that was sufficient to obtain a copyright and meet the deposit requirements.

Tr. 1–25, 1–26.

13. Mr. Jameson testified what was required by the Copyright Office:

I received a call from Ms. Rush [then Assistant Deputy of the Examining Division at the Copyright Office]; and she indicated to me that I was to have a set of masked documents prepared, not of 1,000, but of 100 pages. It was discussed at the interview where these documents were—where these individual pages were to come from ... She indicated to me in a telephone conversation that we were

fice did not review or require deposit of any original documents, but instead simply permitted deposit of masked pages of documents under special relief procedure. The Copyright Office required deposit of only 100 masked pages to be deposited for more than 90,000 pages of documents.

■ Registration decisions by the Copyright Office are reviewable under an abuse of discretion standard. *Atari Games, Corp. v. Oman,* 888 F.2d 878, 881 (D.C.Cir. 1989); *John Muller & Co. v. N.Y. Arrows Soccer Team,* 802 F.2d 989, 990 (8th Cir. 1986). In this case the Copyright Office granted special relief from the ordinary deposit requirements under 37 C.F.R. § 202.20(d).[14] This court finds that the required deposit by the Copyright Office was insufficient in relationship to the documents sought to be registered for copyright, and not representative of those documents. Accordingly, this court rules that approval of the masked sample of documents constituted an abuse of discretion.

## B. UPJOHN FAILED TO SUSTAIN ITS BURDEN TO SHOW THAT THE DOCUMENTS ARE COPYRIGHTABLE

■ At the trial in this matter, Upjohn failed to demonstrate not only that the listed works were a "single unpublished collection" but that the documents in question were unpublished and not in the public domain. In fact, all of the documents in Category A were published articles, and counsel for Upjohn admits that such are not copyrightable by Upjohn. Also the documents in Category B and the documents in Category G containing safety and effectiveness data are available under the FOIA.

■ Ownership of a copyright vests initially in the author of the work. 17 U.S.C. § 201(a) (1982). Upjohn does not own a copyright unless it is a "work made for hire" or the work is commissioned and the ownership rights are expressly transferred to the company by the author in a written instrument. *See* 17 U.S.C. § 201 (1982 & Supp.1991). Upjohn failed to show that it is the author under the "work for hire" doctrine.[15] Also, Upjohn presented no evidence that any person who authored any of the documents at issue was either acting within the scope of her employment or that the work was commissioned and subject to an express agreement transferring ownership rights to Upjohn.

Upjohn failed to demonstrate originality of expression in the documents it claims to have the right of copyright.[16] Also, many of the documents Upjohn has included in its copyright application are compilations

to give her 100 pages uniformly spaced throughout the set of Bates numbers.

However, the selection was made "in a more or less uniform manner" Tr 2–33, and afterwards was reviewed to make sure that the pages of the published documents were excluded. Tr 2–92. Manifestly, selection of documents on a truly representative basis was skewed.

**14.** 37 *See* Trial Exhibit 14. C.F.R. § 202.20(d) states

> **Special relief.** In any case the Register of Copyrights may, after consultation with other appropriate officials of the Library of Congress and upon such conditions as the Register may determine after such consultation:
>
> (i) Permit the deposit of one copy or phonorecord, *or alternative identifying material,* in lieu of the one or two copies or phonorecords otherwise required by paragraph (c)(1) of this section;
>
> (ii) Permit the deposit of incomplete copies or phonorecords, or copies or phonorecords, or copies or phonorecords other than those normally comprising the best edition; or
>
> (iii) Permit the deposit of an actual copy or copies, in lieu of the identifying material otherwise required by this section; or
>
> (iv) *Permit the deposit of identifying material which does not comply with § 202.21 of these regulations.*

Emphasis added.

**15.** A "work made for hire" is "a work prepared by an employee within the scope of his or her employment...." 17 U.S.C. § 101 (1982 & Supp.1991). Grundberg's expert stated that the following factors determine whether a work was intended by the parties to be a work made for hire: 1) who provided the instrumentalities and tools to make the work; 2) who controlled the hours; 3) what was the method of payment; 4) what was the tax treatment; 5) what benefits were provided; and 6) where the work was done. Tr. 2–158.

**16.** To demonstrate originality, the document must have 1) independent origin and 2) a minimal amount of creativity. *Baltimore Orioles v. Major League Baseball Players,* 805 F.2d 663, 668 (7th Cir.1986).

which contain a recitation of facts which are not copyrightable.[17] Upjohn failed to show that it owns the copyright to any specific documents.

### C. THE COPYRIGHT LAWS MAY NOT BE USED TO DEFEAT FREEDOM OF ACCESS TO DOCUMENTS IN THE LITIGATION PROCESS

Upjohn's witness testified that in the fall of 1989, members of Upjohn's legal division determined that copyright registration could be obtained in order to protect litigation documents. Tr. 2–71. Thereafter, copyright registration was sought because Upjohn's attorneys determined that there was a threat of infringement based primarily on Grundberg's Motion to Remove Confidentiality.[18] Since the Grundberg attorneys had a perfect right to file such a motion, it appears that Upjohn intended to use the copyright laws to thwart accessibility to the public of information contained in documents which may be offered and admitted into evidence in court proceedings. It should be noted that placement of documents in court files and offering documents into evidence, even though this may provide access to the public, does not constitute publication under the copyright laws.[19] Also, the copyright law does not prohibit the disclosure of information and does not make nonconfidential documents confidential.[20] This court rules that to whatever extent Upjohn may have a copyrightable interest in the litigation documents, such may not be asserted or maintained to impede or prevent the free use and accessibility of such documents in the context of this litigation.

### D. UPJOHN HAS FAILED TO SHOW AN IMMINENT THREAT OF INFRINGEMENT WHICH WOULD JUSTIFY AN INJUNCTION

In addition, Upjohn failed to sustain its burden to demonstrate a right to injunctive

17. Mr. Jameson agreed that the Copyright Law does not protect facts or prevent disclosure:

Q And you would agree with me, wouldn't you, that the copyright law does not protect facts and data from disclosure?
A Only the manner of its expression.
Q But not the underlying facts and data, correct?
A That's correct.

Tr 2–80. The Supreme Court recently stated: "[F]acts do not owe their origin to an act of authorship. The distinction is one between creation and discovery: the first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence.... *[F]acts*—scientific, historical, biographical, and news of the day ... *'may not be copyrighted and are part of the public domain* to every person.'"

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, — U.S. ——, 111 S.Ct. 1282, 1288–89, 113 L.Ed.2d 358 (1991) (emphasis added). The *Feist Publications* court pointed out that compilations are not protected under the copyright laws, unless "the selection, coordination, and arrangement are sufficiently original to merit protection." *Id.* at ——, 111 S.Ct. at 1294. There was no adequate showing of such in this case.

18. Counsel for Upjohn stated at the trial in this matter that Upjohn "sought that registration to protect our right of copyright and enforce it against anyone threatening to *disclose* those documents without our authorization." Tr. 2–27. Counsel further stated, "There was no need for a registration unless there is a threat of *dissemination* of our unpublished documents." Tr. 2–28.

19. *WPOW, Inc. v. MRLJ Enterprises*, 584 F.Supp. 132 (D.D.C.1985). *See also* 17 U.S.C. § 101 (definition of "publication"); *East/West Venture v. Wurmfeld Assoc.*, 722 F.Supp. 1064, 1066 (S.D.N.Y.1989).

20. The Supreme Court stated in *Harper & Row v. Nation*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), "copyright is intended *to increase and not to impede* the harvest of knowledge.... 'It is intended to motivate the creative activity of authors and inventors by the provision of a special reward, and *to allow the public access to the products of their genius* after the limited period of exclusive control has expired. The monopoly created by copyright thus rewards the individual author in order *to benefit the public.*'" *Id.* at 545–546, 105 S.Ct. at 2223 (*quoting Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 477, 104 S.Ct. 774, 782, 806–07, 78 L.Ed.2d 574) (emphasis added). *See also Bruzzone v. Miller Brewing Co.*, 202 U.S.P.Q. 809, 812 (N.D.Cal.1979):

> Where the assertion of a copyright interest conflicts with the free flow of information in an open society, and so impairs the dissemination of research and intellectual works, the copyright owner's interest should yield to the public welfare lest the very purpose of the Copyright Act be frustrated.

relief. In *Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1462 (5th Cir.1990), the Fifth Circuit stated:

> A preliminary injunction may be granted under section 502 of the Copyright Act if the plaintiff establishes each of the following four factors: (1) a substantial likelihood that the plaintiff will succeed on the merits; (2) a substantial threat that the denial of the injunction will result in irreparable harm to the plaintiff; (3) the threatened injury to the plaintiff outweighs any damage that the injunction may cause to opposing parties; and (4) the injunction will not disserve the public interest.

*Id.* at 1462. Upjohn has not demonstrated any of these elements. In this regard, Upjohn has not shown: a likelihood of success on the merits; particularized substantial threat of irreparable harm; that any harm it may suffer outweighs the harm to the plaintiffs; or that further restricting the use of the documents in this litigation would serve the public interest. Upjohn did not establish that there has been any actual copyright infringement in this case. Moreover, Upjohn failed to show an imminent threat of copyright infringement. *See Rokus v. ABC, Inc.*, 616 F.Supp. 110, 112 (D.C.N.Y.1984).

## II. "GOOD CAUSE" UNDER THE PROTECTIVE ORDER

This court has previously determined that the burden of proof was upon Upjohn to show "good cause" for maintaining the documents in question within the protective order.[21] Courts have held that the showing of good cause under Rule 26(c) is a heavy burden. *United States v. United Fruit Co.*, 410 F.2d 553, 557 (5th Cir. 1969); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir.1986) ("Rule 26(c) places the burden of persuasion on the party seeking the protective order"). The *Cipollone* court stated, "the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* at 1121. *See also Anderson v. Cryovac*, 805 F.2d 1, 7 (1st Cir.1986) (good cause must be based on a specific factual demonstration of potential harm, not on conclusory statements).

Upjohn argues that good cause exists for keeping the documents within the protective order on three separate grounds: (1) pre-trial publicity could result in an unfair trial; (2) removal of the restrictions could result in copyright infringement; and (3) removal of the restrictions could destroy the confidential status of some of the documents.

*Pretrial Publicity: Unfair Trial*

Upjohn claims that release of the documents in any of the categories making them available to the public would violate public policy regarding pretrial publicity

21. At the beginning of the evidentiary hearing/trial in this matter, this court regarded the stipulated protective order as in the nature of an "umbrella" order in that both parties had agreed that the documents could be designated confidential with no showing of such, but under an affirmative representation that the information should be confidential. Under these circumstances the court ruled that the defendant as the party designating such documents as confidential must shoulder the initial burden of showing good cause in response to the motion to remove particular documents from the confidentiality designation. The Third Circuit has spoken to this situation:

> Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential.... [T]he opposing party (after delivery under the umbrella order) could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986).

*See also* Campbell, R., *The Protective Order in Products Liability Litigation; Safeguard or Misnomer?* 31 BC L.Rev. 771, 786 (July 1990) ("An umbrella" or "blanket" protective order typically permits the defendant to designate as "confidential" a large volume or entire class of discovery material. The plaintiff is permitted to challenge the confidentiality designation and the burden of showing that the designated materials are, in fact confidential *rests at all times with the defendant.*) (Emphasis added.)

and could result in prejudice to Upjohn's rights to a fair trial. This in turn is based upon three grounds: *first,* that it may taint the jury pool and that in any event it will create "undue burden and oppression" because it will necessitate additional screening of jurors. The *second* ground is based upon testimony at the evidentiary hearing/trial concerning so-called "media effect" or "media bias." Upjohn claims that the documents are subject to being used in a misleading way and that release of the documents will taint the accuracy of medical events related to Halcion reported to the Spontaneous Reporting System ("SRS").[22] The *third* ground upon which Upjohn claims that release of the documents could result in an unfair trial prejudicial to Upjohn is that the Utah Rules of Professional Conduct, particularly Rule 3.6,[23] contain a strong public policy against pre-trial publicity.[24]

The court rejects Upjohn's contention that release of the documents from the terms of the protective order necessarily would result in an unfair trial prejudicial to Upjohn. Upjohn has failed to show that specific harm likely would result from disclosures. In *United States v. Panhandle Eastern Corp.,* 118 F.R.D. 346, 350 (D.Del. 1988), the court stated: "Rather, good cause requires a showing that the 'disclosures will work a clearly defined and serious injury.'" *Accord, United States v. International Business Machines Corp.,* 67 F.R.D. 40, 46–47 (S.D.N.Y.1975). In this case, many of the documents are already in the public domain or otherwise available to the public under the Freedom of Information Act.[25] Release of those documents from the protective order would not ipso facto result in public dissemination of the documents prior to trial. There is no public right of access to evidence obtained in the discovery process prior to use in public hearings or trials. In this regard, the Supreme Court in *Seattle Times v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) said that a "litigant has no First Amendment right of access to information made available only for purposes of trying his suit" and that "pretrial depositions and interrogatories are not public components of a civil trial." *Id.* at 32–33, 104 S.Ct. at 2207–08. The *Seattle Times* court reasoned that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id.* at 33, 104 S.Ct. at 2208.[26]

As to possible impact upon trial jurors, Upjohn argues that release of the documents so close to the beginning of the trial will result in undue burden and op-

22. The SRS is a Federal Food & Drug Administration mechanism for collecting post-marketing medical events associated with any particular drug.

23. Rule 3.6 provides:

> (a) A lawyer shall not make or cause another to make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially influencing an adjudicative proceeding....

24. Professor Douglas Parker of BYU's J. Reuben Clark School of Law testified at the trial in this matter as follows:

> [I]t's the policy that goes clear back to 1908 and before and that is that an adjudication should be in effect a search for the truth based upon admissible evidence and not tainted by pre-trial publicity that would work some virtual nullification of the exclusionary rules of evidence that would put before the public mind matters that could likely not come into evidence and that would possibly taint the jury pool, make screening more necessary.
>
> It was just a policy that it is just simply not professional behavior to attempt to seek an advantage by pre-trial publicity. Often in a case, one side will have more media appeal than another side. If it gets under way, a party who would prefer not to is almost forced to come in rather than stay out and attempt to counterbalance the efforts of the other side.

Tr. 1–144.

25. The Supreme Court has noted that the fundamental purpose of the FOIA has to do with "an informed citizenry...." *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978).

26. But see, *Public Citizen v. Liggett Group,* 858 F.2d 775, 787–790 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *Hawley v. Hall,* 131 F.R.D. 578 (D.Nev. 1990).

pression to Upjohn "because of the additional screening of jurors it will necessitate." Upjohn's post-hearing brief, p. 54. In this regard, Upjohn demonstrated that there has already been widespread publicity relative to alleged side effects of Halcion, and that access to litigation documents produced in pre-trial proceedings as part of the discovery process, could cause additional widespread publicity prior to trial. Such publicity prior to trial could complicate the jury selection process.

Upjohn's claim of "media effect" is merely a broad allegation of potential and speculative harm. Upjohn maintains that even though the information contained in the Drug Experience Reports in category B is available to the public under FOIA, the "media bias" recognized by epidemiologists could result in an unfair trial. As stated by the Third Circuit, conclusory statements rather than specific demonstrations of fact are not enough to justify maintenance of an order of secrecy. *Cipollone,* 785 F.2d at 1121. In this regard, the court finds the showing of alleged bias made at the hearing to be insufficient and that it does not by itself demonstrate good cause to maintain documents within the protective order.

Upjohn asserts that counsel for plaintiff intend to create an unfair trial situation by specific dissemination of documents to the media in violation of the Utah Rules of Professional Conduct. These rules govern the professional and ethical conduct of lawyers, not what constitutes good cause for inclusion or release of documents within a protective order. Good cause to maintain confidentiality is one thing. Ethical rules governing the conduct of attorneys is another. One of the factors Upjohn stresses as evidence of plaintiffs' attorneys wrongful intentions is that they have filed the motion now before the court to remove confidentiality. This is an astonishing argument. A motion before the court, supported by factual and legal authority, is exactly what is authorized and appropriate. The court perceives no secret or wrongful intention by reason of that filing. If plaintiffs' counsel was so bent upon dissemination of the documents, they might have caused some of the documents obtained under FOIA to be released.[27] Properly, no such action was taken by counsel. Notwithstanding accessibility of some of the documents to the public in general, or release from the terms of the protective order, the attorneys on both sides should not disseminate such documents during the course of the trial.

The court finds that there is an insufficient showing that attorneys on either side of the case have violated or likely will violate public policy against pre-trial or trial publicity so as to taint the trial of this case. Further, the court finds no reason to conclude that release from the protective order of the documents referred to in the motion to remove confidentiality designation as set forth hereinafter will result in an unfair trial by reason of publicity caused by the actions of legal counsel.

Notwithstanding the foregoing, Upjohn did demonstrate that release of the documents at this time could complicate the jury selection process and would be of no material assistance to plaintiffs since they already have full access to the documents. In response, plaintiffs failed to demonstrate undue prejudice if the protective order were to remain in force until the trial begins, which would defer public accessibility until that time, except as to certain restrictions which hamper trial preparation as is hereinafter set forth.

*Copyright Infringement*

Upjohn claims that by virtue of its copyright registration of the documents in question it maintains a right to confidentiality of the documents. However, this court has ruled that Upjohn's Copyright Certificate is

**27.** In *Seattle Times v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), the Supreme Court stated if the information subject to a protective order was available through alternate sources, "the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." *Id.* at 34, 104 S.Ct. at 2208. Certain documents such as the Drug Experience Reports and other documents containing safety and effectiveness data in this case are available through the Freedom of Information Act.

invalid and that this infringement action cannot be maintained on the basis of that certificate. Additionally, Upjohn has not demonstrated that the documents are copyrightable to Upjohn. At oral argument, and in its brief, Upjohn makes the further claim that even if this court holds that the Copyright Certificate involved here is invalid, Upjohn is entitled to copyright protection in those expressions created by its employees. In this regard, Upjohn correctly points out that registration is not a condition of copyright protection, but only a prerequisite to the maintenance of an infringement action. *See* 17 U.S.C. § 408(a) and § 411(a) (1982 & Supp.1991). However, as previously pointed out, Upjohn has not demonstrated which documents it owns under the copyright laws. The copyright laws do not prevent the disclosure of information or transform non-confidential documents into confidential documents. Neither does Upjohn's claim of entitlement to copyright constitute good cause to maintain documents within the protective order or provide a basis to impose any restriction upon the use at trial of documents produced as relevant evidence in this case.

*Confidentiality—Trade Secrets—Commercial Harm*

Fed.R.Civ.P. 26(c)(7) provides that the court, for good cause shown, may make an order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense," including an order "that a *trade secret* or other *confidential* research, development, or *commercial information* not be disclosed or be disclosed only in a designated way...." (Emphasis added.)[28] Manifestly, the parties in this action agreed to place documents under the umbrella of the protective order only if such documents were represented to be "confidential," i.e., "designated confidential." Upjohn agrees that it has no claim of trade secrets to any of the documents represented in categories A through F. (Upjohn Reply memo, p. 4.) As to confidentiality, Upjohn made no particularized showing of commercial or competitive harm regarding any of the documents in Categories A–F.[29] Also, it did not insist that all persons who reviewed the documents covered by the protective order sign the confidentiality agreement required thereunder,[30] and apparently did not advise

**28.** The Notes of the Advisory Committee on Rules set forth this comment relative to the provision in Rule 26(c):

> The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure. Frequently, they have been afforded a limited protection.

**29.** In *Waelde v. Merck, Sharp & Dohme,* 94 F.R.D. 27, 29 (E.D.Mich.1981) the court stated,

> Therefore, to obtain a protective order to protect information in the NDA file sought by plaintiff, *defendant still must make a particularized showing that the information is trade secret or confidential information.*

Emphasis added. No such showing has been made as to documents in Categories A–F. Category B documents are available under FOIA. Category C documents consist of a number of medical events which were reported to the FDA by Upjohn or some other third party. In either case, these medical events are publicly accessible under FOIA and the mere listing of them does not make the document confidential. The memoranda present in Category C are similarly not confidential because they merely list or summarize data, much like a list of Category B documents. Rather than asserting confidentiality, Upjohn claims that Categories D, E, and F are either protected by copyright law or will inhibit its ability to receive a fair trial. Upjohn Reply Memo at 11–13.

In *Parsons v. General Motors,* 85 F.R.D. 724, 726 (N.D.Ga.1980), the court articulated five factors for determining confidentiality. They are "how many employees had knowledge of the information or worked on a confidential project; how the defendant maintained the secrecy of the information; how the defendant controlled or limited the reproduction and circulation of the information; the age of the information; and whether any of the information was required to be reported to the government." Campbell, *supra,* n. 21 at 781. Upjohn showed no evidence as to how many employees had access to the documents; how Upjohn maintained the secrecy of the information or how Upjohn controlled the reproduction and/or circulation of the documents. Most of the information is very old, *see infra* n. 35 and all of it was filed with a government agency.

**30.** Q [H]ave you been given one of the documents, confidentiality forms to sign in this case to look at these documents?

A I am under an arrangement of confidentiality in my working with the firm counsel to Upjohn. I'm under strict confidentiality requirements under that working relationship. *I have not signed a form.*

the Copyright Office of the protective order.[31]

Upjohn claims that all of the documents within Category G are a vital part of its new product research and development, that they were submitted to the FDA as part of Upjohn's New Drug Application (NDA), and that they contain trade secrets and/or confidential information. Upjohn admits that Category G documents contain safety and effectiveness data. Upjohn Post-Hearing Brief at 49. In *Anderson v. Dept. of Health & Human Services,* 907 F.2d 936 (10th Cir.1990) the Tenth Circuit held that the district court committed reversible error in upholding the FDA's refusal to release any documents, including clinical test data, for a drug *which had not yet been approved or marketed.* The Tenth Circuit addressed the definition of trade secrets in the context of an FOIA request made by a litigant who sought to require the FDA to release information contained in a new drug application. The *Anderson* court said:

> [T]hat trade secrets should be defined in the narrower common law sense, as "a secret, commercially valuable plan, formula, process or device that is used for the making, preparing, compounding or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." ... That definition requires that there be a "direct relationship" between the trade secret and the productive process.

*Anderson,* 907 F.2d at 944, citing *Public Citizen Health Research Group v. Food & Drug Administration,* 704 F.2d 1280, 1288 (D.C.Cir.1983). Further, the *Anderson* court said that in order to establish that documents properly come within "confidential information" under 5 U.S.C. § 552(b)(4) (Freedom of Information Act) and 21 U.S.C. §§ 331(j) and 360j(c) (Food, Drug & Cosmetic Act), actual competition must be shown as well as that "substantial competitive injury would likely result from disclosure." *Anderson,* 907 F.2d at 947, quoting *National Parks & Conservation Ass'n. v. Kleppe,* 547 F.2d 673, 679 (D.C.Cir.1976).

In *Waelde v. Merck, Sharp & Dohme,* 94 F.R.D. 27, 29 (E.D.Mich.1981) the court pointed out that "to be completely exempt from disclosure by the FDA, the contents of an NDA file *must be a trade secret or confidential information as well as not previously publicly disclosed.*" (Emphasis added.) The Utah Supreme Court adopted Restatement of Torts § 757 and defined trade secrets in *J & K Computer Systems, Inc. v. Parrish,* 642 P.2d 732, 735 (Utah 1982) as "any formula, patent, device, plan or compilation of information which is used in one's business and which give him an opportunity to obtain an advantage over competitors who do not know it." [32] The Supreme Court of Iowa in *Farnum v. G.D. Searle & Co.,* 339 N.W.2d 384, 389 (Iowa 1983) also adopted the Restatement definition, and quoted the

Jones testimony, Tr. 1-90 (emphasis added).

31. Q Were you familiar with the protective order when you instructed that these documents be taken to Washington and delivered to the Copyright Office?
A I have never seen the protective order, and my only knowledge was that there was a protective order; and until this hearing commenced a couple of days ago, I had never even heard what portions were or specific language contained in that protective order.
THE COURT: Did you advise the Copyright Office that the documents that you wanted to lodge or deposit were under a protective order?
THE WITNESS: I don't recall.
Jameson testimony, Tr. 2-84.
Upjohn submitted a brief regarding "Appropriateness of Disclosing Confidential Documents to Copyright Office" in which it claims that under paragraph 3a of the protective order it may submit documents to a government agency when "it is required by law to submit to those agencies." (p. 2) Upjohn was not required by the Copyright Office to submit the documents in the normal course of Upjohn's business. Rather, Upjohn was seeking to register for copyright litigation documents which were subject to the protective order of this court.

32. Presumably, Utah law should be applied in this case in determining whether the documents contain confidential information or trade secrets. In this regard, the Tenth Circuit in *Sil-Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1511-12 (10th Cir.1990) said: "It is undisputed that, in considering a choice of law question, a federal court must apply the substantive law of the state in which it sits." *See also Smith v. BIC Corp.,* 869 F.2d 194, 199 (3rd Cir.1989).

factors which the Restatement enumerates in comment b thereof:

> 1) the extent to which the information is known outside of [the party's] business; 2) the extent to which it is known by [those] involved in his business; 3) the extent of measures taken by him to guard the secrecy of the information; 4) the value of the information to him and to his competitors; 5) the amount of effort or money expended by him in developing the information; 6) the ease or difficulty with which the information could be properly acquired or duplicated by others.[33]

Confidential information is often regarded as information which if disclosed, "will cause a 'clearly defined, serious injury' to the defendant's business." [34]

Under the above formulations, Upjohn cannot claim trade secrets or confidentiality as to information set forth in the case report forms ("CRFs"). Typically, these are not written or filled out solely by Upjohn.[35] Upjohn claims that they should be regarded as confidential because they are a part of its drug application, and that the Federal Food and Drug Administration would not release these reports to the public. As we have seen, however, these documents are subject to FOIA access in that they contain safety and effectiveness data which is publicly accessible on request, except under extraordinary circumstances. See 21 U.S.C. § 355(*l*) (1984 & Supp.1991). In any event, this court finds that Upjohn has not met the burden of showing good cause for keeping those reports under the protective order, and Upjohn has not demonstrated any proprietary or commercial rights in such reports which would preclude removal from the protective order.[36]

Technical and statistical reports not authored by Upjohn cannot properly be classified as confidential to Upjohn. However, certain executive summaries, technical reports and statistical reports may contain a "compilation of information" used in Upjohn's business which gives it certain competitive advantages over those who do not have the documents. The Tenth Circuit has said that documents which include clinical test data might be commercial in nature. *Anderson*, 907 F.2d at 944–45. *See also Public Citizen Health Research Group*, 704 F.2d at 1290 (documentation of health and safety experience contained in application for marketing approval may be commercial information). Based upon testimony received at the trial in this matter, technical and statistical reports authored by Upjohn, and executive summaries, may contain "confidential research, development, or commercial information." [37] How-

**33.** In *Cuno Inc. v. Pall Corp.*, 117 F.R.D. 506, 508 (E.D.N.Y.1987) the court said:

> In determining whether certain information should be classified as trade secrets and, therefore, subject to non-disclosure, the court must consider the following:
>
> "(1) the extent to which the information is know outside of the business; (2) the extent to which the information is known to those involved in the business; (3) the extent of the measures taken to guard the secrecy of the information, (4) the value of the information to the business and its competitors;"
>
> (Citations omitted.)
>
> and "the ease or difficulty with which information could be properly acquired by others."
>
> (Citations omitted.)

**34.** Campbell, *The Protective Order in Products Liability Litigation*, 31 BC L.Rev. 771, 781 (July 1990). *See also supra* n. 29.

**35.** These forms are filled out by an independent investigator who "almost always [is] a physician who is under contract with the company [Upjohn]." Testimony of Dr. Jones, Tr. 1–120.

**36.** Upjohn's New Drug Application was filed in May 1976. Tr. 1–166. Most of the documents at issue here, contained in Category G, are at least that old. Claims of confidentiality and trade secrets are less persuasive when the documents in question are stale or old. *See In re Agent Orange Product Liability Litigation*, 104 F.R.D. 559, 575 (E.D.N.Y.1985); *United States v. IBM, Corp.*, 67 F.R.D. 40, 47–49 (S.D.N.Y.1975).

**37.** Dr. Ishler testified at trial that making statistical reports available to competitors would cause competitive harm to Upjohn. He testified that the materials have a monetary value, as evidenced by the practice within the pharmaceutical community to sell and trade such materials, and that having this information available would provide a head start for any company wanting to explore new uses of the product. Tr. 2–13. However, Dr. Ishler did not attempt to quantify what the information was worth, i.e., its sale value to another company. Nor did Dr. Ishler demonstrate that Upjohn would suffer specific competitive disadvantage. Dr. Scharf, plaintiffs' expert, stated that a second applica-

ever, Upjohn did not demonstrate that it will suffer a particularized harm if such documents were released from the protective order. Furthermore, Upjohn failed to establish or quantify commercial worth or sale value, and what was presented in this respect was speculative.[38]

Upjohn has sought to discharge its burden of showing "good cause" by coming within the general language of Rule 26(c) of the Federal Rules of Civil Procedure which permits the court, for good cause shown, to issue an order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." In this regard, Upjohn urges the court to exercise its discretion and keep the documents within the protective order without regard to whether such are entitled to be designated as confidential.[39] The problem with Upjohn's argument is that it is apparent from the protective order itself that it rests upon a good faith representation that the documents in question are *confidential* as well as otherwise protected according to law. The court finds that Upjohn has not established good cause or otherwise met its burden of proof to establish that the documents sought to be released from the confidentiality designation in the protective order contain trade secrets, that such contain confidential information or that release of such documents from the protective order would cause Upjohn cognizable or commercial harm.[40]

Plaintiffs have made a sufficient particularized showing to challenge the confidentiality designation of the specific documents sought to be removed from the protective order restrictions,[41] but have failed to demonstrate how they will be injured if there is no pre-trial disclosure or pre-trial public accessibility of the documents. On the other hand, plaintiffs have demonstrated that continuation of the protective order hampers trial preparation and has a chilling effect upon experts and potential witnesses because of the requirement thereunder that a confidentiality agreement must be executed before viewing the documents.

The court has broad discretion with respect to modification of protective orders,[42] and in this case the parties by

tion for approval from an adverse indication "could not be based on information from previous studies." Tr. at 2–124.

38. "Speculative allegations of injury from the disclosure of years-old information are not sufficient to warrant issuance of a protective order." *Deford v. Schmid Products Co.,* 120 F.R.D. 648, 654 (D.Md.1987) (*quoting US v. Exxon,* 94 F.R.D. 250, 252 (D.D.C.1981)).

39. Upjohn emphasizes quotes from *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984) in which the Supreme Court stated that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required," and J. Moore, 4 *Moore's Federal Practice* ¶ 26.78 (1989) in which the commentator said that the enumeration of specific examples "is merely illustrative of the general discretion vested in the court to protect the parties from abuses that might otherwise arise from a system designed to operate largely without intervention of the court."

40. *Cuno Inc. v. Pall Corp.,* 117 F.R.D. 506 (E.D.N.Y.1987).

41. See *Ierardi v. Lorillard, Inc.,* No. 90–7049, 1 (E.D.Pa. April 11, 1991) 1991 WL 59519 wherein a similar motion was denied because the party seeking declassification failed to " 'indicate precisely' which documents they believe to be not confidential." *See also* n. 21, R. Campbell at 786. ("Because courts frequently enter umbrella orders to cover large document productions, the plaintiff who challenges their confidentiality will be required to identify the specific documents that do not qualify for protection.") (Cit. omitted.) In this case plaintiffs filed a motion to remove confidentiality from 8200 pages of documents. They separated the documents into Categories A–G and defined what type of documents were in each category. Because Category G contained a large percentage of the total documents for which plaintiff sought to remove the confidentiality designation, a further detailed submission was filed with the court *in camera.* The *in camera* documents were representative of the Category G documents: 1) Case report forms; 2) Technical and statistical reports; and 3) Executive summaries.

42. The Court in *Seattle Times* further stated, "The trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery. The unique nature of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times,* 467 U.S. at 36, 104 S.Ct. at 2209.

stipulation in the protective order in question agreed that it could be reconsidered by the court at any time without prejudice.[43] Accordingly, the court has determined to exercise its discretion to modify the protective order as to the documents described in the pending motion as follows: (1) the published articles in Category A are unconditionally released from the protective order forthwith; (2) as to the documents which will be used at trial, the court determines that good cause does not exist to maintain those documents under the existing protective order after the trial has commenced and the jury is selected. Those documents are released from the protective order restrictions at such time as they are admitted into evidence at the trial or when they are used as the basis for expert opinion testimony even though not admissible or admitted into evidence, provided such are filed with the court, or (3) when they are otherwise used at trial with permission of the court.

The protective order is further modified, effective immediately, so as to eliminate the requirement that persons viewing the documents must execute the confidentiality agreement set forth therein; provided that the documents being utilized for trial preparation shall not be disseminated or made accessible to the public until after commencement of the trial in accordance with the conditions specified in (2) or (3).

Based upon the Findings of Fact and Conclusions of Law which are promulgated contemporaneously herewith, and the other determinations which are contained in the body of this memorandum, it is hereby

ORDERED, that the Upjohn Certificate Of Copyright Registration which purports to cover the litigation documents in the products liability case is invalid as a matter of law; it is

FURTHER ORDERED, that Upjohn's Certificate of Copyright Registration in this case may not be utilized as the basis for this copyright infringement action; it is

FURTHER ORDERED, that plaintiff's motion to remove confidentiality designation as to all of the documents in Category A is Granted, effective immediately; it is

FURTHER ORDERED, that plaintiffs' motion to remove confidentiality designation as to all of the documents in Categories B–G is GRANTED, subject to the restrictions set forth in the following two paragraphs; it is

FURTHER ORDERED, that the protective order is modified so that removal of documents and release from the terms and conditions of the protective order shall be effective as to particular documents after the trial commences following selection of the jury, (1) at the time that such documents are admitted into evidence at the trial of this case, or (2) at the time such documents are used as the basis for expert opinion testimony even though not admissible or admitted into evidence, provided that they are filed with the court, or (3) at the time the documents otherwise are used at trial with permission of the court; it is

FURTHER ORDERED, that in order to facilitate trial preparation the protective order is modified effective immediately so as to eliminate the requirement that persons viewing the documents must execute the confidentiality agreement called for therein; provided that the documents shall not be disseminated or made accessible to the public until after commencement of the trial and at such time that the documents are used at trial as set forth above.

IT IS SO ORDERED.

43. Paragraph 11 of the Protective Order dated October 4, 1989, provides:

11. This protective order is without prejudice to reconsideration by the court as discovery continues and may, upon a showing of need and good cause, be modified.