**FONAR CORPORATION,**
Plaintiff–Appellee,

v.

**DECCAID SERVICES, INC.,** Stephen Steckler, Louis Treglia, Peter Kim, Medical Funding of America, Inc. and David Smith, Defendants–Appellants,

**Equi Med Leasing, Inc. and Morton Mackof, Defendants.**

**No. 170, Docket 92–7407.**

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1992.

Decided Jan. 11, 1993.

**428**

Virginia M. Richard, New York City (Maribel Figueredo, Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele & Richard, of counsel), for defendants-appellants Deccaid Services, Stephen Steckler, Louis Treglia and Peter Kim.

Henry B. Gutman, New York City (Kerry L. Konrad, Joshua H. Epstein, O'Sullivan, Graev & Karabell, of counsel), for plaintiff-appellee.

Before: VAN GRAAFEILAND, PRATT and ALTIMARI, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Deccaid Services, Inc., Stephen Steckler, Louis Treglia, Peter Kim, Medical Funding of America, Inc. and David Smith appeal from a preliminary injunction, a contempt order and an order sealing certain documents *pendente lite* issued by the United States District Court for the Eastern District of New York (Wexler, J.) in this copyright infringement and trade secret suit. For the reasons that follow, we vacate and remand the injunction and contempt orders and dismiss the appeal from the protective order.

Fonar Corporation manufactures, sells and services Magnetic Resonance Imaging ("MRI") scanners, sophisticated devices used in the making of medical diagnoses. In order to facilitate the maintenance of its product, Fonar has developed unpublished and copyrighted "Maintenance Software." This software is not in evidence, despite two district court orders that it be produced. Moreover, the record does not disclose which specific computer programs fall within the umbrella term "Maintenance Software." Fonar also has created "Schematics," diagrams of the scanners' internal structure, which likewise are asserted to be trade secrets.

Deccaid is an independent medical imaging equipment service company which repairs MRI scanners, including those manufactured by Fonar. Steckler, Treglia and Kim, erstwhile employees of Fonar, are Deccaid employees. Medical Funding of America owns Fonar scanners; Smith is an employee of Medical Funding and also a former Fonar employee.

In 1991, Fonar became concerned about defendants' possible unauthorized use of its maintenance software and schematics and began an investigation into defendants' activities. On July 19, 1991, in anticipation of litigation, Fonar obtained copyright registration number TXU–475–784 for "Fonar Editors and Utilities," "Fonar Diagnostics," and "Fonar Field Engineering Utilities." Pursuant to applicable regulations, the copyright deposit contained only the first 29 pages and last 34 pages of a printout of the programs' source code, redacted to eliminate trade secrets.

On October 1, 1991, Fonar instituted suit alleging copyright infringement and misappropriation of trade secrets. On October 2, 1991, plaintiff moved by order to show cause returnable on October 7 for a prelim-

inary injunction restraining defendants from "copying, duplicating, distributing, offering for sale, or using plaintiff's copyrighted 'Maintenance Software', 'Schematics' or other trade secrets of the Beta 3000 and Beta 3000M." The order to show cause provided further that pending the hearing and determination of the preliminary injunction application, the defendants were "temporarily restrained pending further Order of the Court from copying, reproducing, selling or using plaintiff's copyrighted 'Maintenance Software', 'Schematics' and other trade secrets of for [sic] the Beta 3000 and Beta 3000M."

On October 29, 1991, Fonar moved for a finding of contempt, alleging that Deccaid had violated the TRO by using Fonar's copyrighted maintenance software while repairing a Fonar scanner in Las Cruces, New Mexico on October 8 and October 25. On November 1, 1991, the district court amended the TRO by prohibiting the defendants Deccaid, Steckler, Treglia, Kim, and Equi Med Leasing, Inc. "from servicing any FONAR MRI Scanners pending Hearing and determination of the Preliminary Injunction." On February 25, 1992, the court entered an order sealing all schematics and software on file with the court, and prohibiting defendants from disclosing them pending the outcome of the litigation.

■ In findings of fact and conclusions of law dated February 28, 1992 and amended March 9, 1992, the district court held Deccaid, Kim, Treglia, Steckler and Equi Med Leasing, Inc. in contempt of the temporary restraining order and granted Fonar's motion for a preliminary injunction against all of the defendants. *See* 787 F.Supp. 44. Because we unquestionably have jurisdiction to hear the appeal from the preliminary injunction order, *see* 28 U.S.C. § 1292, we will consider the merits of the contempt order without deciding whether it is appealable *per se*. *See Emery Air Freight Corp. v. Local Union 295*, 449 F.2d 586, 590 (2d Cir.1971), *cert. denied*, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972).

■ A district court may punish for disobedience of an order only if the order is clear and unambiguous. "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). "An unclear order provides insufficient notice to justify a sanction as harsh as contempt." *United States v. International Bhd. of Teamsters*, 899 F.2d 143, 146 (2d Cir.1990). The contempt order in the instant case was predicated on alleged violations of an unclear restraining order. The order prohibited defendants from "using plaintiff's copyrighted 'Maintenance Software'," but never defined precisely what constituted "Maintenance Software." Indeed, even at this stage in the proceedings, there is nothing in the record to identify the programs that comprise this protected software. Throughout, Fonar has adhered to the most elusive of definitions and has refused repeatedly to provide the documents that would narrow and clarify the issue. For example, in the affidavits supporting Fonar's motion for a TRO, "Maintenance Software" was defined as "all software other than Operational Software . . ., including but not limited to, 'diagnostic and maintenance software', 'field engineering utilities software' and 'editors and utilities software'." Notably, these affidavits do not define "Operational Software." Even the copyright deposit does not contain a table of contents, program menu, or any other complete listing of the protected programs. The significance of the foregoing omissions is highlighted by the following provision in the same order that held the defendants in contempt:

> Fonar shall produce copies of the copyrighted maintenance software for the Court and for each of the named defendants.

Fonar argues that defendants knew precisely what was prohibited, notwithstanding any vagueness in the restraining order. Even if this were true, Fonar's argument would be unpersuasive. Although specificity is designed in part to ensure that a party receives notice of precisely what con-

duct is outlawed, it also serves to facilitate appellate review. *Schmidt v. Lessard,* 414 U.S. 473, 476–77, 94 S.Ct. 713, 715–16, 38 L.Ed.2d 661 (1974) (per curiam). "Unless the trial court carefully frames its orders of injunctive relief, it is impossible for an appellate tribunal to know precisely what it is reviewing." *Id.* at 477, 94 S.Ct. at 715. That is the situation in the instant case.

■ Turning next to the preliminary injunction itself, we hold that it too cannot stand. Fed.R.Civ.P. 65(d) requires a district court, in issuing an injunction, to "set forth the reasons for its issuance," "be specific in terms," and "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." This requirement is satisfied only if the enjoined party can "ascertain from the four corners of the order precisely what acts are forbidden." *Sanders v. Air Line Pilots Ass'n, Int'l,* 473 F.2d 244, 247 (2d Cir.1972). The order in the instant case does not satisfy this requirement.

For example, it mandates that all of the defendants "strictly adhere to the prohibitions of [the court's] Order of November 1, 1991, as modified in paragraph 14 of the accompanying Findings of Fact and Conclusions of Law regarding Contempt." *See* 787 F.Supp. at 48. As stated above, the November 1 order prohibited five of the defendants from servicing any Fonar MRI scanners pending the hearing and determination of the preliminary injunction application. Paragraph 14 of the accompanying findings and conclusions describes the supposed irreparable harm which plaintiff might suffer. *Id.* at 47. This provision demonstrates the problems that inhere in incorporation by reference as proscribed in Rule 65(d), and it clearly does not satisfy the Rule. *See Hartford–Empire Co. v. United States,* 323 U.S. 386, 410, 65 S.Ct. 373, 385–86, 89 L.Ed. 322 (1945). As was the case in *International Longshoremen's Ass'n, supra,* 389 U.S. at 76, 88 S.Ct. at 208, the decree below can best be described as "unintelligible" and hence unenforceable.

The district court's circuitous definition of "Maintenance Software" is equally troublesome. "Maintenance Software" is defined "as all software other than 'Operational Software.'" In turn, "Operational Software" is defined as that "described in listed menus in the 'User's Manual.'" 787 F.Supp. at 47. As a result, it is impossible to "ascertain from the four corners of the order precisely what acts are forbidden." *Sanders, supra,* 473 F.2d at 247. On the contrary, one must turn to unclear extrinsic documents in an attempt to discover the breadth of the court's prohibition. This is not what is contemplated by Rule 65(d). *See Brumby Metals, Inc. v. Bargen,* 275 F.2d 46, 48–49 (7th Cir.1960). In sum, the preliminary injunction is too indefinite and ambiguous to permit of enforcement.

■ Much of the indefiniteness that leads us to vacate the injunction and contempt orders also exists in the district court's protective order. However, because the protective order does not purport to grant any of the ultimate relief sought by the plaintiff and the defendants have shown little, if any, damage resulting therefrom, we will follow our customary practice of denying interim review. *See Ronson Corp. v. Liquifin Aktiengesellschaft,* 508 F.2d 399, 401 (2d Cir.1974); *International Prods. Corp. v. Koons,* 325 F.2d 403, 406–07 (2d Cir.1963). Rather than converting the appeal from the protective order into a petition for a writ of mandamus, as we did in *Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940, 943–47 (2d Cir.1983), we suggest that upon remand the district court give further consideration to the terms of that order in the light of defendants' allegations of prior publications and in the interests of certainty.

The district court's preliminary injunction and order of contempt are vacated and remanded. The appeal from the district court's protective order is dismissed.