FONAR CORPORATION, Plaintiff,

v.

MAGNETIC RESONANCE PLUS, INC., and Robert Domenick, Defendants.

No. 93 Civ. 2220.

United States District Court,
S.D. New York.

March 27, 1996.

**510**

Laurence Shiff, Shiff & Tisman, New York City, for Plaintiff.

Lateef Mtima, Coudert Brothers, New York City, for Defendant.

### OPINION

MOTLEY, District Judge.

In the instant case the court is asked to rule upon the degree of specificity with which a plaintiff seeking to enforce a copyright for computer software must describe that work. As the following discussion shows, plaintiff has failed to describe its purportedly copyrighted material in such a way that would reveal the substance of the protected work. Accordingly, for the reasons set forth herein, defendants' motion for summary judgment is granted and plaintiff's copyright claims under federal law, as well as the supplemental state law claims of unfair competition, are dismissed in their entirety.

This motion for summary judgment is being considered by the court after all discovery has been completed, a joint pre-trial order has been filed, each party's pre-trial brief has been filed and the case set for trial.

### BACKGROUND

Plaintiff Fonar Corporation, (hereinafter "plaintiff"), is a corporation organized under the laws of the State of Delaware, with its principal place of business in Melville, New York. (Complaint at ¶ 3.) Plaintiff is engaged in the research, development, production and sale of Magnetic Resonance Imaging (MRI) systems used for medical diagnostic

purposes. To maintain these systems, plaintiff has developed "Maintenance Software" for its systems' computers and schematic diagrams of the systems' hardware. (Complaint at 3–6.) Plaintiff describes the software that is the subject of this suit as follows:

> The term "Maintenance Software" means software used in or with the system to aid in its installation, maintenance or repair, and includes all software other than operational software. Maintenance Software includes but is not limited to "diagnostic and maintenance software," "field engineering utilities software" and "editors and utilities software."

(Complaint at ¶ 13 n. 1.)

Plaintiff alleges that the defendants "willfully infringed the copyright in plaintiff's Maintenance Software by copying, reproducing, selling, and/or offering [it] for sale." (Complaint at ¶ 28.) Plaintiff also alleges that defendants engaged in unfair competition and trade secret misappropriation through the use and copying of plaintiff's Maintenance Software and schematic diagrams. (Complaint at ¶¶ 32–36.) Plaintiff seeks, *inter alia*, declaratory and injunctive relief, either actual or statutory damages, punitive damages, costs and attorneys' fees. (Complaint at 12–16.)

Defendant Magnetic Resonance Plus, is a corporation with offices in New York and California. Defendant Robert Domenick is the corporation's president. (Collectively, "defendants"). (Complaint at ¶¶ 4–5; Answer at ¶¶ 4–5).

### The Instant Motion

By motion *in limine*, defendants sought an order dismissing plaintiff's copyright claims on the ground that plaintiff failed to describe the material that is the subject of the instant action with sufficient particularity to sustain a claim for copyright infringement.

Central to defendants' motion is its argument that the Second Circuit's prior ruling in *Fonar Corp. v. Deccaid Services, Inc.*, 983 F.2d 427 (2d Cir.1993), is controlling on the issue *sub judice*. Defendants argue that "the Court of Appeals for the Second Circuit [in *Deccaid, supra*] has already ruled that

plaintiff's description of the Fonar Maintenance Software is too vague and insufficient to provide a basis for any injunctive and/or monetary recovery." (Defs.Mem.Supp.Mot. in Lim. at 1.) In *Deccaid, supra,* the Second Circuit reversed and vacated several of the district court's orders in that case—the initial temporary restraining order, preliminary injunction and subsequent contempt orders—which relied upon and incorporated plaintiff's definition of its software.[1] The Second Circuit determined that this definition, because it was vague and overbroad, could not form the basis of injunctive relief. In addition, the court found that the violation of any restraining order or injunction based thereon could not serve as a basis for a finding of contempt. *Id.* at 429–430.

When pressed at oral argument on the motion *in limine,* counsel for plaintiff failed to characterize the software in any greater detail:

> Maintenance software is the broad piece of software ... which is comprised of three different segments, it is like major chapters. One is a chapter for diagnostic software, which diagnos[es] materials; one is editors, which changes certain parameters on the machine; one is field engineering utilities, which does something else.

(R. at 44; *See also,* R. at 47).[2]

Counsel for plaintiff stated further that once the jury had ruled in plaintiff's favor, he would provide the court with a "proposed injunction form ... running about 40 pages in length, single-spaced" which would set forth the programs covered by the Maintenance Software definition. (R. at 45–46, 63–64.)

After oral argument, defendants noted a contradiction in the definition originally set forth in the complaint. Counsel for defendants pointed out that at his deposition one of plaintiff's witnesses admitted that there were elements of the Maintenance Software that were not "operational software" and at the same time were not copyrighted as part of the Maintenance Software. (Letter of Counsel for Defendants, dated November 21, 1995, at 2.) This testimony illuminated a contradiction in plaintiff's definition: the original definition stated that all software that was not operational software was included in plaintiff's purportedly copyrighted Maintenance Software. (*See* Complaint at ¶ 13 n. 1.) In response to this allegation, plaintiff's counsel argued that the "copyright registration clearly applies only to the Diagnostic, Editors and [Field Engineering] Menu Software ... The other software *included in the Maintenance Software but not included in the copyright registration* is "MAPPING" and "SHIMAGING". Fonar has made no claim against defendants for infringement of these pieces of software." (Letter of Counsel for Plaintiff, dated November 22, 1995, at 3 (emphasis added)).

Because of the shifting nature of the matters before the court concerning defendants' motion, the court converted the motion to dismiss to one for summary judgment, allowing the parties to supplement their submissions. *See* November 28, 1995 Order.

**Plaintiff's Supplemental Information**

Even though plaintiff has had every opportunity to supplement the definition of the software which is the subject of this action, except where its statements demonstrate the internal contradictions of the definition, plaintiff has not departed in any significant way from the original definition contained in the complaint.

First, in its supplemental submission, plaintiff provides several "directories" of programs which purportedly make up the contents of the Maintenance Software. These are set forth without any descriptive information and in the most cryptic of terms, rendering them meaningless to the lay eye. (Wolf

---

1. In *Deccaid,* the court described the Maintenance Software as follows:

    [I]n the affidavits supporting Fonar's motion for a TRO, "Maintenance Software" was defined as "all software other than Operational Software ..., including but not limited to, 'diagnostic and maintenance software', 'field engineering utilities software' and 'editors and utilities software'." Notably, these affidavits do not define "Operational Software." ...
    983 F.2d at 429 (citations omitted).

2. All references to the record refer to the transcript from the oral argument on the motion held on November 16, 1995.

Aff. at Exh. J.) Plaintiff has also submitted "print screens" that purport to show that defendants utilized the copyrighted software, although these are similarly puzzling, showing only line after line of computer language text mixed with clusters of meaningless terms. (*See Id.* at Exh. K.) Lastly, an affidavit was submitted by one of plaintiff's employees that failed to provide any greater detail than that which was originally set forth in the complaint. *See* Wolf Aff. Additionally, plaintiff failed to clarify the issue described above concerning the apparent internal contradiction in plaintiff's description of its work. In brief, plaintiff has not supplemented in any significant way the basic definition originally contained in the pleadings, even though serious questions have been raised concerning its validity.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD.

A motion for summary judgment shall only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law.'" *Id.,* at 323, 106 S.Ct. at 2552. Moreover, "a complete failure of proof concerning an essential element of the nonmoving party's case *necessarily renders all other facts immaterial. Id.* (emphasis added).

Although the court must view the inferences to be drawn from the facts in the light most favorable to the non-movant, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), in order to defeat the motion the non-moving party must still establish the existence of a genuine issue of material fact for trial and may not merely rely upon the pleadings in order to overcome the motion. Fed.R.Civ.Proc. 56(e); *Celotex Corp.,* 477 U.S. at 322–324, 106 S.Ct. at 2552–53; *Christian Dior–New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 37 (2d Cir.1986). Moreover, "'"mere conclusory allegations or denials"' in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir.1995) (citations omitted). Similarly, "a party may not 'rely upon mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Id.* (citations omitted).

[redacted] In the context of copyright infringement actions, summary judgment is an appropriate remedy "where it is clear that the plaintiff cannot make out the elements of the claim." *Repp v. Lloyd Webber,* 858 F.Supp. 1292, 1300 (S.D.N.Y.1994). Accordingly, in order to defeat the motion, plaintiff's definition of its copyrighted software, together with its additional submissions in opposition to the motion, must raise a genuine issue of material fact with regard to the essential elements of its infringement action. A discussion of the protections afforded by the copyright laws and their relation to computer software is essential to the resolution of the matters raised on the instant motion.

### II. COPYRIGHT PROTECTIONS AND COMPUTER SOFTWARE.

[redacted] To maintain an action for copyright infringement, plaintiff must establish two elements. First, plaintiff must show that it owns a valid copyright. *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1295–96, 113 L.Ed.2d 358 (1991). Though rebuttable, the introduction of a valid copyright registration establishes the *prima facie* validity of plaintiff's copyright. *Durham Indus., Inc. v.*

*Tomy Corp.,* 630 F.2d 905, 908 (2d Cir.1980). The introduction of a valid registration is not dispositive regarding the issue of the copyrightability of the underlying work, however. *Woods v. Bourne Co.,* 60 F.3d 978, 990 (2d Cir.1995). Moreover, although proper registration does not determine copyrightability, it is a prerequisite to suit under the copyright laws, *Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 453 (2d Cir. 1989).

■ Under the second element of a copyright action, plaintiff must prove "copying of constituent elements of the work that are original." *Feist Publications, Inc.,* 499 U.S. at 361, 111 S.Ct. at 1296. Even if the court were to assume that plaintiff holds a valid copyright, plaintiff still must show that the protected elements of its work have been copied. *See Lotus Dev. Corp. v. Borland Intern., Inc.,* 49 F.3d 807, 818 (1st Cir.1995) (holding copying of uncopyrightable subject matter of software not copyright infringement), *aff'd by an equally divided court,* —— U.S. ——, 116 S.Ct. 804, 133 L.Ed.2d 610 (1996); *Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 9 F.3d 823, 832 (10th Cir. 1993); *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 705 (2d Cir.1992) (holding "those elements of a computer program that are necessarily incidental to its function are" unprotectible); *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.) (noting "that a whole work is copyrighted does not mean that every element of it is copyrighted; copyright protection extends only to those components of the work that are original to the creator."), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).[3]

■ The rationale underlying elements of a copyright action is found in the purposes of the copyright laws themselves. Under the Constitution, Congress has the power "[t]o Promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8; *See, also, Sony Corp. of America v. Universal City Studios,*

*Inc.,* 464 U.S. 417, 428–29, 104 S.Ct. 774, 781, 78 L.Ed.2d 574 (1984). Copyright policy must balance the interest in encouraging individual effort through personal gain with the general public good of fostering learning, progress and development through the dissemination of ideas. *Feist Publications, Inc.,* 499 U.S. at 349–350, 111 S.Ct. at 1289–91; *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156, 95 S.Ct. 2040, 2043–44, 45 L.Ed.2d 84 (1975). These purposes are embodied in the "fundamental principle" of copyright law that "a copyright does not protect an idea, but only the expression of the idea." *Altai, Inc.,* 982 F.2d at 703.

In order to carry out these goals, Congress enacted the Copyright Act, 17 U.S.C. § 101, *et seq.,* ("the Act"), which embodies the purposes of copyright protections described above. The Act outlines the scope of these protections as follows:

> Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

17 U.S.C. § 102(a).

At the same time, the Act does not protect those types of works described in § 102(b) thereof, which provides:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

*Id.*

Distinguishing between protectible expression and unprotectible ideas and processes is the critical—and, at times difficult—task in infringement actions. As Judge Learned Hand stated in *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487 (2d Cir. 1960):

**3.** Copying can be proven "either by direct evidence or, as is most often the case, by showing that (1) the defendant had access to the plaintiff's copyrighted work and (2) that defendant's work is substantially similar to the plaintiff's copyrightable material." *Altai, Inc.,* 982 F.2d at 701.

The test for infringement of copyright is of necessity vague. In the case of verbal "works" it is well settled that although the "proprietor's" monopoly extends beyond an exact reproduction of the words, there can be no copyright in the "ideas" disclosed but only in their "expression." Obviously, no principle can be stated as to when an imitator has gone beyond copying the "idea," and has borrowed its "expression." Decisions must therefore inevitably be *ad hoc.*

*Id.* at 489.

As with the accounting principles analyzed by the Supreme Court over a century ago in *Baker v. Selden,* 101 U.S. 99, 104, 25 L.Ed. 841 (1879),[4] computer programs often serve a utilitarian function which renders the task of separating protected expression from unprotected idea especially difficult. *Altai, Inc.,* 982 F.2d at 704 (comparing computer programs to aesthetic works and concluding that the latter "hover even more closely to the elusive boundary line described in [17 U.S.C.] § 102(b)").

The Act defines a computer program as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C. § 101. The Second Circuit in *Altai, Inc., supra,* described the basic elements of computer programs and the process through which they are composed with great clarity and this description is set forth in the margin.[5]

As the Legislative History of the Act indicates, Congress intended to recognize the important idea/expression dichotomy in copyright protections as they relate to computer programs. "[T]he legislative history explicitly states that copyright protects computer programs only 'to the extent that they incorporate authorship in programmer's expression of original ideas, as distinguished from the ideas themselves.'" *Altai,* 982 F.2d at 703 (quoting H.R.Rep. No. 1476, 94th Cong., 2d Sess. 54, reprinted in 1976 U.S.C.C.A.N. 5659, 5667) (hereinafter "House Report").

Whether a party can maintain a copyright infringement action involving computer software will often hinge on the extent to which the protectible elements of the copyrighted work have been copied.[6] Indeed, even if defendants engaged in unrestrained copying of plaintiff's work, plaintiff would still be obligated to show that elements that constituted protected expression had been infringed. *See, e.g., Lotus Dev. Corp.,* 49 F.3d at 818 (holding copying of uncopyrightable elements of software not copyright infringement); *Gates Rubber Co.,* 9 F.3d at 833 (recognizing that "even if generalized copying is established in the first instance, it will

---

**4.** In *Baker,* the Court found that a copyrighted book on a particular system of accounting was not infringed by a similar book using a similar plan achieving similar results.

**5.** The *Altai, Inc.* court explained:

> In writing the[ ] directions [of the program], the programmer works "from the general to the specific."
>
> The first step in this procedure is to identify a program's ultimate function or purpose.... [Then] a programmer breaks down or "decomposes" the program's ultimate function into "simpler constituent problems or 'subtasks,'" which are also known as subroutines or modules.... [D]epending upon the complexity of its task, a subroutine may be broken down further into sub-subroutines.
>
> Having sufficiently decomposed the program's ultimate function into its component elements, a programmer will then arrange the subroutines or modules into what are known as organizational or flow charts ... [which] map the interactions between modules that achieve the program's end goal.

> In order to accomplish these intra-program interactions, a programmer must carefully design each module's parameter list. A parameter list ... is "the information sent to and received from a subroutine." The term "parameter list" refers to the form in which information is passed between modules ... and the information's actual content ... "The functions of the modules in a program together with each module's relationships to other modules constitute the 'structure' of the program."

982 F.2d at 697–698 (citations omitted).

> The structure of the program is embodied in a "source code," which is written in one of several computer languages, and an "object code", i.e., "the binary language comprised of zeros and ones through which the computer directly receives its instructions." *Id.* at 698.

**6.** The term "copying" is used here as "a shorthand reference to any infringement of the copyright holder's exclusive rights" set forth in 17 U.S.C. § 106. *Gates Rubber Co.,* 9 F.3d at 832 n. 6.

ultimately still be necessary to establish copying of precisely identified protected elements of a program before copyright infringement can be established"); *Altai, Inc.,* 982 F.2d at 710 (holding non-literal components of computer program are subject to copyright protection to the extent that the "golden nugget" of protectible expression has been copied) (citation omitted); *Sega Enter. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1524 (9th Cir.1993) (holding "[t]o the extent that a work is functional or factual, it may be copied, as may those expressive elements of the work that 'must necessarily be used as incident to' expression of the underlying ideas, functional concepts, or facts") (quoting *Baker v. Selden,* 101 U.S. at 104, 25 L.Ed. 841 (1879)).

■■■ The purposes of the copyright laws, together with the holdings in the cases mentioned above, provide a basic framework within which to determine plaintiff's burden at this stage in the litigation regarding the definition of its copyrighted material. Because no action for copyright infringement will lie where a defendant has copied unprotected elements of an otherwise copyrighted work of computer software, *e.g., Lotus Dev. Corp., supra,* or even where the copying of protected elements was incident to legitimate uses of the work, *e.g., Sega Enter. Ltd., supra,* at the summary judgment stage plaintiff must raise a genuine issue of material fact as to defendants' alleged illicit copying of protectible elements of its work. This would

require plaintiff to set forth the specific portions of its work that it claims are entitled to copyright protection and the extent to which defendants engaged in copying of these portions. *Cf. Gates Rubber Co.,* 9 F.3d at 832.[7]

■■■ Requiring plaintiff to provide the information described above concerning the constitutive elements of its copyrighted work is also critical to insure that injunctive relief, if granted, is properly framed. "[A] court's authority to issue an injunction in a copyright case should be limited in scope to that part of the work that is protectible." *Lipton v. Nature Co.,* 71 F.3d 464, 475 (2d Cir.1995) (interpreting 17 U.S.C. § 502). Accordingly, the definition of the copyrighted work must also be sufficiently concise so that appropriate injunctive relief can be granted.[8]

As described above, the Second Circuit in *Fonar v. Deccaid, supra,* found the district court's orders in that case were insufficient as a matter of law because they had been based on the vague definition of the software programs provided by the plaintiff. Because the definition utilized by the district court was itself vague and ambiguous, the court's orders based on such definitions could not stand. *Id.; cf. Kepner–Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 538 (5th Cir.) (holding injunction against future infringement of copyrighted computer software cannot enjoin otherwise permissible uses of

---

**7.** The Tenth Circuit in *Gates Rubber Co.* held that the question of whether defendant copied protected elements of the work "involves two separate inquiries: 1) whether the defendant, as a factual matter, copied portions of the plaintiff's program; and 2) whether, as a mixed issue of fact and law, those elements of the program that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable." 9 F.3d at 832 (footnote and citation omitted)

**8.** Injunctions issued by a federal court are governed by Fed.R.Civ.Proc. 65(d), which provides in pertinent part:

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not be reference to the complaint or other document, the act or acts sought to be restrained ...

*Id.*

This provision "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974) (citation omitted). Because an injunctive order carries with it the threat of judicial punishment for its violation, "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* (footnote omitted); *See also, Gunn v. University Comm. to End the War in Viet Nam,* 399 U.S. 383, 389, 90 S.Ct. 2013, 2016–17, 26 L.Ed.2d 684 (1970). This Rule also serves the "important function" of insuring that an appellate court "know[s] precisely what it is reviewing." *Schmidt,* 414 U.S. at 477, 94 S.Ct. at 715 (citation omitted).

the work), *cert. denied*, —— U.S. ——, 115 S.Ct. 82, 130 L.Ed.2d 35 (1994).[9]

To summarize, the critical elements of a copyright action are: 1) ownership of a valid copyright; and, 2) copying of protected elements of the work. Given that computer programs are highly functional in nature, in an action alleging copyright infringement of computer software, careful scrutiny of plaintiff's allegations concerning the protected elements of its copyright software is especially important in order to insure that protection is not extended beyond the purposes of the statute and that injunctive relief is narrowly crafted and concise. At the summary judgment stage in the litigation, therefore, plaintiff must show that the definition it maintains—with consideration of its supplemental submissions and in due deference to any inferences plaintiff should enjoy on the motion—is sufficient to establish genuine issues of material fact relating both to the validity of the copyright as well as the issue of whether defendants have copied protected elements of the work in question.

### III. PLAINTIFF'S DEFINITION OF ITS MAINTENANCE SOFTWARE.

■ In the instant case, defendant has alleged that plaintiff's definition is so vague that the reliance on it fails to establish the validity of plaintiff's copyright and that injunctive and monetary relief based thereon cannot be awarded. Moreover, defendants have highlighted an internal inconsistency in plaintiff's definition: that uncopyrighted elements appear to be included in its definition.

**9.** The *Deccaid* court found as follows:

A district court may punish for disobedience of an order only if the order is clear and unambiguous.... The contempt order in the instant case was predicated on alleged violations of an unclear restraining order. The order prohibited defendants from "using plaintiff's copyrighted 'Maintenance Software'," but never defined precisely what constituted "Maintenance Software." Indeed, even at this stage in the proceedings, there is nothing in the record to identify the programs that comprise this protected software. Throughout, Fonar has adhered to the most elusive of definitions and has refused repeatedly to provide the documents that would narrow and clarify the issue.
983 F.2d at 429 (citations omitted).

Here, as in the *Deccaid* case, *supra*, "Fonar has adhered to the most elusive of definitions and has refused repeatedly to provide the documents that would narrow and clarify the issue." 983 F.2d at 429.[10] Furthermore, whether or not the court takes into account the inconsistent and unsupported[11] allegations proffered in plaintiff's counsel's letter, dated November 22, 1995, described above, the supplemental submissions fail to depart significantly from the original definition contained in the complaint. The supplemental evidence offered by plaintiff in opposition to the instant motion reiterates that there are three "modules" to the program—"'Editors and Utilities,' 'Diagnostics,' and 'Field Engineering Utilities'"—and purportedly introduces lists of the programs under these elements, although this information is indecipherable. (Wolf Aff. at ¶ 3 and Exh. J.)

### A. Validity of Plaintiff's Copyright.

Given the definition espoused by plaintiff, the court is unable to find that plaintiff has established a valid copyright in its Maintenance Software. In registering its copyright, plaintiff did not include the entire source code with its registration—a 2,000 page document according to plaintiff's counsel—choosing rather to file its Maintenance Software as a collection, under 37 C.F.R. § 202.3(b)(3), which, plaintiff argues, entitled it to file just a fraction of the actual work under the registration.

As set forth above, the production of a valid registration establishes *prima facie* validity of the copyright, which shifts the bur-

**10.** Although in *Deccaid* the copyright registration had not been entered into evidence, the registration itself, which *is* before the court here, lends little help to plaintiff's case. Plaintiff admits that the copyrighted work is 2000 pages long and that the copyright registration contains only a small fraction of the work, (R. at 65): i.e., the first 29 and last 34 pages of the entire work. (Shiff Aff. at 6–7.) Moreover, as with the print screens annexed to plaintiff's supplemental submissions, the pages annexed to the copyright registration contain the text of unintelligible computer programs that fail to clarify the issue in question.

**11.** It is important to note that counsel's allegations contained in the November 22, 1995 letter have never been expressly substantiated.

den to defendant to challenge the copyright's validity. *Durham Indus., Inc.,* 630 F.2d at 908. Quoting the Legislative History of the Copyright Act of 1976, the court in *Carol Barnhart Inc. v. Economy Cover Corp.,* 773 F.2d 411 (2d Cir.1985), noted that the "presumption of validity" extended to the copyright registration " 'merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff.' " 773 F.2d at 414 (quoting House Report, *supra,* 1976 U.S.C.C.A.N. at 5773). The burden placed on the defendant once the registration is submitted "varies depending on the issue bearing on the validity of the copyright." *Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663, 668 (3rd Cir.1990).

■ Defendants challenge the validity of plaintiff's registration by stating that it was improper for plaintiff to have filed the work as a collection. Registration of multiple works as a single collection is permitted under 17 U.S.C. § 408(c) and the applicable regulations, which permit an applicant for a copyright registration to file a collection of works under a single certificate of registration provided, *inter alia,* the elements of the collection "are assembled in an orderly form." 37 C.F.R. § 202.3(b)(3)(i)(B).[12] Although plaintiff asserts that its registration is valid under this provision, "[w]here other evidence in the record casts doubt on the question [of the validity of the copyright], validity will not be assumed." *Durham Indus., Inc.,* 630 F.2d at 908; *Merritt Forbes & Co. Inc. v. Newman Investment Securities, Inc.,* 604 F.Supp. 943, 948 (S.D.N.Y.1985) (same).

■ Here, defendants assert that it is impossible to determine from plaintiff's copyright registration the contents of the registered work because, in accordance with 37 C.F.R. § 202.20(c)(2)(vii)(A), which allows for deposit of the first and last twenty-five pages of a copyrighted computer program, plaintiff only registered the first group of pages of the *first* "module" of the collection and the last group of pages of the *last* "module".[13] Defendants correctly point out that plaintiff's mass filing of the source code as a single collection without sufficient identifying materials failed to identify the works that are the subject of the copyright. Because plaintiff's copyright registration fails to identify the material covered by the copyright, sufficient doubt has been cast on the validity of the copyright registration, *see Grundberg v. Upjohn Co.,* 137 F.R.D. 372, 386 (D.Utah 1991),[14] and thus "validity will not be assumed." *Durham Indus., Inc.,* 630 F.2d at 908.

■ Similarly, a review of the plaintiff's description of the copyrighted work reveals that it fails to show that the software collection is "assembled in an orderly form" as required by the regulation. 37 C.F.R.

---

**12.** 37 C.F.R. § 202.3(b)(3) provides as follows:

Registration as a single work. (i) For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work:

  *   *   *   *   *   *

(B) In the case of unpublished works: all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished "collection." For these purposes, a combination of such elements shall be considered a "collection" if: (1) The elements are assembled in an orderly form; (2) the combined elements bear a single title identifying the collection as a whole; (3) the copyright claimant in all of the elements, and in the collection as a whole, is the same; and (4) all of the elements are by the same author, or, if by different authors, at least one

of the authors has contributed copyrightable authorship to each element. Registration of an unpublished "collection" extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection.
*Id.*

**13.** According to plaintiff's submissions, these modules are themselves made up of other programs. (Wolf Aff. at ¶ 5.)

**14.** In *Grundberg,* the court found that it was appropriate to invalidate the copyright registration there because the applicant had filed the work as a collection but had failed to describe the contents of the work for which copyright protection was asserted. 137 F.R.D. at 386.

§ 202.3(b)(3).[15] Indeed, plaintiff's self-serving and superficial descriptions of the different "modules" of the subject software, no matter how often plaintiff repeats them, do not provide any basis for the court to rule that these are organized in an orderly form as required by the statute.[16]

Accordingly, when such deep doubt is cast on the validity of the copyright for the reasons set forth above, plaintiff loses the benefit of *prima facie* validity otherwise granted it with the presentation of a registration, and must prove the " 'multitude of facts' " necessary to prove the validity of its copyright: e.g., originality and copyrightability. *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d at 414 (citation omitted). *See also Durham Indus., Inc., supra*, 630 F.2d at 908–911 (holding works lacked originality to warrant finding of copyright protection even after submission of copyright registration); *Tempo Music, Inc., v. Famous Music Corp.*, 838 F.Supp. 162, 167–172 (S.D.N.Y.1993) (analyzing work for copyrightability and originality after submission of copyright registration); *Grundberg v. Upjohn Co., supra*;[17] *cf. Plains Cotton Co-op. Ass'n v. Goodpasture*

*Computer Service, Inc.*, 807 F.2d 1256, 1260 (5th Cir.) (holding ownership of copyright "is shown by proof of originality, copyrightability, and compliance with applicable statutory formalities."), *cert. denied*, 484 U.S. 821, 108 S.Ct. 80, 98 L.Ed.2d 42 (1987); *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.) (en banc) (upholding preliminary injunction compelling appellants to cancel recordation of a copyright for failure to show sufficient originality to warrant copyright protection), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).[18]

Upon review of the record, the court finds as a matter of law that the cryptic definition of the Maintenance Software upon which plaintiff relies, which fails to indicate that the work is copyrightable in any way, is insufficient to serve as a basis for the instant copyright action. Nowhere does plaintiff set forth with any particularity the elements of the work or the originality or uniqueness of its functioning. Without introducing a genuine issue of material fact on the issue of copyrightability, plaintiff cannot establish the first element of a copyright case: i.e., owner-

---

**15.** The only evidence offered in this regard is plaintiff's conclusory allegations that "[t]he three modules are packaged together and considered a single work not only because they are used for the same purposes—maintenance and service of Fonar MRI scanners—but also because there are several service functions which require interaction between modules." Wolf Aff. at ¶ 7. Although this may show that plaintiff considers this a single work, it fails to show that the collection is organized in an orderly fashion as required by the regulation in question.

**16.** Indeed, the registration certificate bears an even more superficial description of the work, simply setting forth the titles of the sections of the Maintenance Software. *See* Copyright Registration, Shiff Aff. at Ex. E.

**17.** In *Grundberg, supra*, the district court found the holder of the copyright in that case, defendant Upjohn, had failed to meet the factors listed in 37 C.F.R. § 202.3(b)(3) and thus the registration was "fatally defective." 137 F.R.D. at 385.
The court found further as follows:
A copyright claimant may not obtain a valid copyright certificate, and the copyright office may not effectively approve registration for such under 17 U.S.C. § 408(c) and 37 C.F.R. § 202.3(b)(3)(i)(B) (1990), where documents sought to be copyrighted are represented to be part of a single collection, embracing some

documents which are not copyrightable, mixed in and listed indiscriminately with copyrightable documents and where the copyright application provides no reasonable or workable means for determining what documents in fact constitute the "single unpublished collection." 137 F.R.D. at 384–385.
The court went on to determine that Upjohn had failed to establish the requisite ownership and originality in its work to enjoy copyright protection. *Id.* at 387–388.

**18.** Plaintiff's reliance on the district court's decision in *Altai, Inc.*, 775 F.Supp. 544, 556 (E.D.N.Y.1991), *aff'd* 982 F.2d 693, 705 (2d Cir. 1992), to support its questionable registration practices is misplaced. There, the court noted that plaintiff was entitled to register a single program without registering separately each of the sub- and sub-sub-programs in order to obtain copyright protection for the entire body of the work. From the discussion in the district court's opinion, it does not appear that plaintiff there tried to register dozens of programs as a collection. Moreover, the district court's opinion does not mention the extent of the deposited work. Plaintiff here, as best the court can determine, registered a series of programs under three "modules" and only deposited the first 29 pages of the first program of the first module and the last 34 pages of the last program of the last module.

ship of a valid copyright.[19] Any other issues of fact that may be raised by plaintiff are necessarily immaterial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53.

### B. Copying of the Protected Elements of Plaintiff's Work.

■ Similarly, plaintiff cannot prove the second element of a copyright case: i.e., that copying of the constituent copyrighted material occurred. Instead of providing the court and defendants with a meaningful definition of the work in question, plaintiff basically adhered to the cursory definition set forth in the original complaint. Moreover, counsel for plaintiff even admitted that plaintiff could not detail the specific programs that were purportedly infringed. (R. at 64.)

Even assuming then—as plaintiff alleges in opposition to this motion—that defendants have copied the entire "Maintenance Software" here, plaintiff has failed to show that it can meet its burden of proving that such copying was carried out with regard to protectible elements of the copyrighted work. In other words, if plaintiff has not shown that its work contains protectible elements, it obviously cannot show that these protectible elements have been copied in such a way that the statute forbids. As set forth above, *supra* § II., plaintiff must prove "copying of constituent elements of the work that are original." *Feist Publications, Inc.*, 499 U.S. at 361, 111 S.Ct. at 1295–96. Here, plaintiff has failed to raise a genuine issue of fact in this regard because it has failed to identify the constituent elements of the subject work. Without doing so, plaintiff cannot overcome the instant motion with regard to the second element of its case.

### C. Plaintiff's Other Arguments.

Two cases upon which plaintiff relies which deserve some discussion here are distinguishable upon several grounds.[20] In *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330 (9th Cir.1995), the court reviewed a district court's issuance of an injunction against a defendant therein that was a service contractor for plaintiff's computer systems. In *Triad Systems*, however, the court did not reach the issue determined herein, i.e., that constitutive elements of the software had to be copied in order for there to be a finding of copyright infringement. Instead,

---

**19.** Plaintiff's self-serving and cryptic definition failed to serve any legitimate function after the filing of the complaint in the instant suit other than to frustrate the defendants' and the court's efforts to narrow the issues for trial. This definition fails in any way to identify and distinguish the elements of the work that would not otherwise fall outside the protections offered under the copyright laws under well-established doctrines of copyright law. *See, e.g., Gates Rubber Co.*, 9 F.3d at 838 (defining doctrine of "merger" under which courts deny copyright protection to "expression that is inseparable from or merged with the ideas, processes, or discoveries underlying the expression" and similar "scenes a faire" doctrine under which courts will not extend copyright protection to "expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting"). Identifying the ways in which a copyrighted work—especially one concerning functional computer software—does not fall under these basic doctrines is an elementary obligation of a litigant in this type of action. Plaintiff's silence on this fundamental burden speaks volumes about its inability to establish a case of copyright infringement.

**20.** Plaintiff also cites several other cases that simply do not assist its case: *Vault Corp. v. Quaid Software Ltd.*, 847.F.2d 255 (5th Cir.1988) (holding defendant's wholesale copying of work did not constitute copyright infringement under the Act); *Advanced Computer Services v. MAI Systems Corp.*, 845 F.Supp. 356, 365–366 (E.D.Va.1994) (recognizing that wholesale copying does not preclude finding of fair use); *ISC–Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310 (N.D.Ill. 1990) (confirming Magistrate Judge's report that found defendant liable for copyright infringement where its versions of plaintiff's copyrighted software that it routinely used and distributed were identical to plaintiff's software without addressing issue of copyrightability); *Micro–Sparc, Inc. v. Amtype Corp.*, 592 F.Supp. 33, 34 (D.Mass. 1984) (holding defendant liable for copyright infringement where it "input" printed command codes into computer disk by typing programs published in magazine and distributed them when such programs were produced for purchasers of magazine); *Apple Computer, Inc. v. Formula Intern. Inc.*, 562 F.Supp. 775 (C.D.Cal.1983) (recognizing that computer programs are protected generally under the Act and finding that plaintiff was not trying to copyright ideas but rather its own expression), *aff'd* 725 F.2d 521, 525 (9th Cir.1984) (noting that plaintiff "seeks to copyright only its particular set of instructions, not the underlying computer process").

the court simply assumed that illicit copying had occurred based on plaintiff's allegations that defendant's servicing of plaintiff's computers necessarily entailed copying the entire body of software at issue. The court found that these allegations were sufficient to establish a *prima facie* case of copyright infringement, justifying the issuance of an injunction against the activity. 64 F.3d at 1335. Given the procedural posture of the instant matter, however, the court will not make the same assumption. Similarly, in *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir.1993), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994), defendant service company admitted copying the entire copyrighted operational software as they serviced plaintiff's computers, *Id.* at 518, and the only relevant issue there was whether such use constituted copyright infringement and not whether constituent elements of the work were copied. *Id.*

Here, the vague and at times internally inconsistent definition proffered by plaintiff failed to differentiate between the uncopyrighted and copyrighted elements of the software; moreover, the definition failed to describe the copyrightable elements of the work. The particular facts of this case, as distinguished from those in the cases outlined above, warrant inquiry into the superficial description of the purportedly copyrighted work in order to determine if plaintiff can establish a case of copyright infringement. The precedents cited by plaintiff do not liberate it from its obligation to raise a genuine issue of material fact with regard to the basic elements of its claim. Plaintiff's failure to do so warrants dismissal of its case. *Repp v. Lloyd Webber*, 858 F.Supp. at 1300.

## IV. JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

For the reasons set forth above, the federal claims in this action must be dismissed. Accordingly, the supplemental state law claims based on unfair competition should also be dismissed. 28 U.S.C. § 1338(b); *Historical Truth Prod., Inc., v. Sony Pictures Entertainment, Inc.*, 93 Civ. 5529, 1995 WL 693189, at *14 (November 22, 1995, S.D.N.Y.)

(holding federal court's jurisdiction over state law claims of unfair competition conferred by 28 U.S.C. § 1338(b) is "conditioned on viability of the copyright claim" and once the copyright claim is dismissed, § 1338 "no longer confers jurisdiction over any of the remaining claims"). *Cf.* 28 U.S.C. § 1367(c); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–727, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966) (holding court should decline to hear supplemental state law claims after dismissal of federal claims upon which jurisdiction is based).

### CONCLUSION

For the reasons set forth above, the motion for summary judgment is granted.

### Order

For the reasons set forth in the accompanying Opinion filed simultaneously herewith, defendants' motion for summary judgment is GRANTED and the complaint dismissed in its entirety.

SO ORDERED.