**FONAR CORPORATION, Plaintiff,**

v.

**MAGNETIC RESONANCE PLUS, INC., and Robert Domenick, Defendants.**

**No. 93 Civ. 2220 (CBM).**

United States District Court, S.D. New York.

Sept. 3, 1997.

## MEMORANDUM OPINION

MOTLEY, Senior District Judge.

On March 27, 1996, this court granted defendants' motion for summary judgment, holding that plaintiff's definition of its copyrighted software was far too vague to enable this court to hold a trial on the question of whether the software was infringed. The Second Circuit later reversed this determination and stated that there was a genuine issue of material fact as to the validity of plaintiff's copyright. The Second Circuit further held that though plaintiff's software definition was a poor one, the court could not grant summary judgment on this basis, though it could sanction plaintiff if it failed to provide a better definition after being ordered by the court to do so. Adhering to this ruling, the court hereby sanctions plaintiff pursuant to Rule 16(f) because it failed to provide an adequate definition of its software when directed to do so by this court.

## BACKGROUND

The facts underlying this dispute are set forth in this court's March 27, 1996 Opinion granting defendants summary judgment and familiarity therewith is assumed. *See Fonar v. MR Plus,* 920 F.Supp. 508 (S.D.N.Y.1996). To summarize briefly, plaintiff is a manufacturer of magnetic resonance imaging ("MRI") scanners and has created software

which it claims allows it to service its machines effectively in the event that they fail to function properly. Defendant MR Plus, Inc. services plaintiff's MRI machines, and defendant Robert Domenick is the president and Chief Executive Officer ("CEO") of MR Plus. The basis of this suit is plaintiff's allegation that defendants have used its copyrighted software in order to service plaintiff's machines.

From the time this case began, plaintiff has engaged in dilatory behavior for the sole purpose of harassing defendants. For example, plaintiff failed to make its own CEO, Dr. Damadian, available for a deposition despite repeated requests by defendants and the court that he appear. In order to prevent this deposition from taking place, plaintiff requested numerous extensions of discovery, twice canceled the deposition, and even went so far as to substitute Dr. Damadian's son as the deposition witness. As a result of this obfuscation, plaintiff was sanctioned by Memorandum Opinion and Order dated August 3, 1995.

Furthermore, after this court granted summary judgment against plaintiff, defendants moved for an award of attorney's fees and sanctions pursuant to the inherent power of the court as well as 28 U.S.C. § 1927 for litigating a frivolous claim in bad faith. In response, by letter dated May 10, 1996, D. Stuart Meiklejohn of the law firm of Sullivan & Cromwell informed the court that he had been retained as plaintiff's new counsel and requested additional time to respond to the motion for attorney's fees and sanctions. The request was granted by Order dated May 10, 1996.

However, rather than simply respond to defendants' motion, plaintiff also made an untimely motion for reconsideration without having obtained leave of the court pursuant to Local Rule 3(j) and without having previously indicated that it had any intention of doing so. As a result, the court sanctioned plaintiff and directed defendants to submit contemporaneous billing records for time spent defending against the motion. *See Fonar v. MR Plus,* 935 F.Supp. 443 (S.D.N.Y. 1996).

Plaintiff's most egregious discovery violation, however, was its refusal over a two year period to provide even an arguably acceptable definition of the "maintenance software" which it claimed was copyrighted. In its complaint, Fonar defined "maintenance software" as all of its software other than the "operational software" but did not define operational softwares.[1] Ironically, the Second Circuit had held in an earlier case in which plaintiff had sued for copyright infringement that this same definition was too elusive and vague to support the grant of a preliminary injunction. *Fonar Corp v. Deccaid Servs., Inc.,* 983 F.2d 427 (2d Cir.1993). Furthermore, in the Joint Pretrial Order which the court directed the parties to produce in October of 1993, Fonar used the same definition and then presented, as an issue for trial, the question of whether this essentially undefined software was infringed. (Joint Pretrial Order "PTO" at Schedule 8–A, ¶ 1). Moreover, at a pretrial conference held on November 16, 1995, while hearing defendants' motion to dismiss the copyright claim on the grounds that it was not specific enough to enable defendant to mount an effective defense, the court repeatedly questioned plaintiff's lawyer about the inadequacy of plaintiff's definition. Plaintiff's lawyer refused to provide any further information regarding the software. (*See* Tr. at 42–47, 63–66, 72–77). Plaintiff's ludicrous suggestion to the court at that time was to proceed to trial and, should the jury determine that defendants had infringed the undefined "maintenance software," plaintiff would then provide the court with a proposed 50 page, single-spaced injunction which gave a full explanation of the protected elements of plaintiff's software. (Tr. at 45). Soon thereafter, by order dated November 28, 1995, the court converted the motion to dismiss into a motion for summary judgment and directed both parties to submit

---

1. Indeed, as the court noted in granting summary judgment, defendant's counsel indicated that one of plaintiff's witnesses had testified on deposition that there were elements of the maintenance software that were neither "operational software" nor copyrighted. (Letter of Counsel for Defendants, dated November 21, 1995, at 2.) This testimony moved plaintiff's proffered definition from the category of "elusive" to what can only be described as incoherent nonsense.

any further evidence regarding the issue of whether plaintiff had a valid copyright. Plaintiff did submit an affidavit from Mr. Robert B. Wolf, one of the authors of the copyrighted software, but this affidavit provided little if any useful explanation regarding the software. The court then granted summary judgment, and plaintiff subsequently filed its untimely request for reconsideration, including therewith a second affidavit by Mr. Wolf which provided a startlingly fuller definition of the copyrightable software. As was noted *supra,* the court refused to consider the second Wolf affidavit and sanctioned plaintiff for making the reconsideration motion.

In January of this year, the Second Circuit reversed this court's grant of summary judgment. *Fonar v. MR Plus,* 105 F.3d 99 (2d Cir.1997). That court agreed that Fonar's software definition was "flawed and unhelpful," *id.* at 103, but stated that "the district court has the tools necessary to compel the requisite disclosure of information and contentions, and to prevent delay or trial by ambush. *See generally* FED.R.CIV.P. 16 & 37(b),(c). The entry of summary judgment, ... however, is not ... one of those tools." *Id.*

Shortly thereafter, defendants made a motion pursuant to Rules 16 and 37 to dismiss this case for discovery violations. The court denied that motion on July 17, 1997, ruling that dismissal was a harsh remedy to be imposed only in the most extreme circumstances and that such circumstances did not exist at the time. The present motion concerns the propriety of granting sanctions short of dismissal for plaintiff's Rule 16 violations.

## DISCUSSION

Rule 16(f) provides the following:

If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the confer- ence, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders as are just, and among others any of the orders provided in Rules 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

■ It is well settled that in this court, the standards to be applied in imposing sanctions under Rule 16 are identical to the familiar standards contained in Rule 37. *James River Corp. v. Interamerica Trust Co.,* 1990 WL 6551, at *2; FED.R.CIV.P. 16, advisory committee's note, 1983 Amendment ("Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery. This should facilitate application of Rule 16(f), since courts and lawyers are already familiar with the Rule 37 standards."). *See also Salahuddin v. Harris,* 782 F.2d 1127, 1133 (2d Cir.1986)(holding that, insofar as the sanction of dismissal is concerned, the same standards apply to both Rule 16 and Rule 37); *Johnson v. M. Melnick & Co., Inc.,* 1996 WL 239994, *1 (S.D.N.Y.)(same); *Quiles v. Beth Israel Med. Ctr.,* 168 F.R.D. 15, 18 (S.D.N.Y.1996)(same). Of course, the Rules are different in that Rule 16 may be imposed by a court *sua sponte* while Rule 37 requires that the aggrieved party move for sanctions. FED.R.CIV.P. 16 & 37.[2]

■ Moreover, the imposition of sanctions pursuant to Rule 37 (and hence Rule 16) is committed to the sound discretion of the district court. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Minotti v. Lensink,* 895 F.2d 100, 102–03 (2d Cir.1990); *Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 71 (2d

---

**2.** The court is imposing these sanctions upon plaintiff upon its own initiative. However, given that defendants have recently moved to dismiss this case under Rule 37, plaintiff can hardly claim that it was not aware of the possibility that it would be sanctioned.

Cir.1988). The purpose of the sanctions is three-fold: (1) to ensure that a party will not benefit from its own failure to comply; (2) to obtain compliance with the particular order issued; and (3) to serve as a general deterrent effect on the case and on other litigants as well. *Update Art,* 843 F.2d at 71; *Cine Forty–Second Street Theatre v. Allied Artists,* 602 F.2d 1062, 1066 (2d Cir.1979). Both the Supreme Court and the Second Circuit have indicated on numerous occasions that sanctions are often a necessary means of dealing with a party which flouts court orders. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *Metropolitan Hockey,* 427 U.S. at 643, 96 S.Ct. at 2781; *Update Art,* 843 F.2d at 71; *Cine Forty–Second Street,* 602 F.2d at 1063–64 (2d Cir.1979).

Rule 16 provides a range of possible sanctions running from the "mildest" sanction of requiring the offending party to compensate the victimized party to the harshest sanctions of all, dismissal or default judgment. *Id.* The latter are considered by the Second Circuit to be "extreme sanctions, to be deployed only in rare situations." *Id.* at 1064; *accord Salahuddin v. Harris,* 782 F.2d 1127, 1133 (2d Cir.1986); *Israel Aircraft Indus., Ltd. v. Standard Precision,* 559 F.2d 203, 208 (2d Cir.1977).

■ There can be no doubt that plaintiff has violated Rule 16. First of all, the court directed the parties by Order dated September 28, 1995 to file a Joint Pretrial Order by October 6, 1995. Though the Pretrial Order was completed, it was done quite poorly. Plaintiff refused to define the software in any more definite a manner than had been done in the complaint, yet indicated that it wanted the jury to decide the question of infringement. Obviously, the very purpose of the Joint Pretrial Order is to insure that all of the issues that will be raised at trial have been made known to the court and to the opposing party, and plaintiff's submissions were totally inadequate in this regard. Moreover, at the November 15, 1995 conference, at which defendants' motion to dismiss was heard, plaintiff's counsel refused to participate in good faith as required by Rule 16 because he did not provide a fuller definition of the copyright. Plaintiff knew that one of the primary bases upon which defendants' motion was predicated was an inadequate definition of the software, and plaintiff should therefore have been prepared to provide a fuller definition. Finally, on November 28, 1995, only twelve days after the conference at which defendants' motion to dismiss was heard, the court issued an Order directing the parties to supplement their papers with any further evidence on the copyright claim and plaintiff basically failed to do so. Since plaintiff was certainly aware, after the conference of November 16, 1995, of the court's concern that the definition was inadequate and that the case could not be tried unless the issue of exactly what the copyright covered was more fully explained, it must have understood that the further evidence to which the court referred in its November 28 Order would include a better definition of "maintenance software." Plaintiff did provide more information, but this was information which, as the court explained in granting summary judgment, did little to supplement plaintiff's extremely poor definition. *Fonar,* 920 F.Supp. at 516. This type of behavior is unquestionably an abusive litigation practice which may be sanctioned under Rule 16.

As was noted previously, this court has already declined to dismiss the case pursuant to Rules 16 and 37 because such a remedy seems unduly harsh, particularly since an arguably adequate definition of the software has now been produced.[3] However, using its

---

3. The court does not presently determine whether the definition of maintenance software contained in the May 20, 1996 Wolf affidavit is all that is needed to proceed to trial. Plaintiff argued at the pretrial conference of July 17, 1997 that the affidavit "contains as much of an explanation of this software as can be done in English." (Tr. at 18). Defendants do not concede this, but they do admit that the affidavit "goes a long way to helping all of us understand just what it is that is at issue in this case." (Tr. at 21). Whether or not the definition will need to be supplemented further will have to be determined at a later date, but it is important to note that for present purposes, plaintiff provided for the first time on May 20, 1996, over three years after this case began, a definition of its software that is considerably better than one which the Second Circuit has criticized on two separate occasions. *Deccaid,* 983 F.2d at 429; *MR Plus,* 105 F.3d at 103.

broad discretion, the court determines that the proper penalty to apply is to require plaintiff to compensate defendant for the unnecessary time and expense which has nearly caused it to enter bankruptcy. Since defendants have not yet submitted contemporaneous billing records detailing the time spent as a result of plaintiff's Rule 16 violation, the court directs plaintiff to submit such records by September 11, 1997. Defendants are cautioned that the expenses to which they are entitled are only those *additional* expenses they were required to incur because of plaintiff's bad faith failure to provide a better definition of the software, not all expenses associated with this lawsuit. The Second Circuit has made clear that plaintiff has a colorable claim, and it would therefore be improper for this court to reimburse defendants for all expenses incurred as a result of a lawsuit which plaintiff may yet win.

Furthermore, plaintiff is warned that it has severely tried the court's patience with its dilatory behavior and similar conduct will not be tolerated in the future. If plaintiff continues to employ discovery abuses of this sort, the court will dismiss all of plaintiff's claims.

## CONCLUSION

Plaintiff is sanctioned pursuant to Rule 16 of the Federal Rules of Civil Procedure for failing to provide an adequate definition of its software despite being directed by the court on numerous occasions to do so. Defendants are directed to submit time records so as to enable the court to determine the appropriate amount of money to award them. Finally plaintiff is warned that further discovery abuses will result in the dismissal of its case from this court.